## STAATS *vs.* HOWLETT.

</div>

The surviving members of a firm may continue the business in its name, after its dissolution by the death of one of its members, and such survivors will be bound by contracts made in the course of such business.

A copartnership will be bound by a contract made by one of the partners in his own name for the account of the firm: *e. g.* if a promissory note be signed by one of the partners in this form, " A. B. for A. B. & Co." the firm will be liable.

The defendant gave the plaintiff an undertaking in writing as follows: " I hereby ob-ligate myself to hold you harmless for any endorsement you may make for, or have made for, the *late* firm of Peck, Howlett & Foster, not exceeding $3,000 ;" the firm having become dissolved before the giving of this writing by the death of one of the members ; *held* that a note subsequently made by one of the surviving part-ners in the course of liquidating the business of the firm and signed " S. R. How-lett, for the late firm of Peck, Howlett & Foster," was within the terms of the guaranty.

*Held also,* that so far as the writing related to endorsements *to be made,* the consid-

*eration* for the guaranty was sufficiently expressed to satisfy the requirement of the statute of frauds.

*And further*, that although the writing was void for failing to express the consideration so far as it professed to indemnify the plaintiff against *precedent* endorsements, still this did not impair its validity in regard to *future* endorsements to be made by the plaintiff.

ASSUMPSIT on an undertaking signed by the defendant and addressed to the plaintiff in the following words: "Syracuse, May 29th, 1841. To Barent P. Staats, Esq. I hereby obligate myself to hold you harmless for any endorsement you may make for, or have made for, the *late* firm of Peck, Howlett & Foster, not exceeding three thousand dollars. Parley Howlett."

The cause was tried before a referee. It was proved that the firm referred to in the letter consisted of Daniel Peck, S. R. Howlett, and Ezra Foster. Peck died shortly before the date of the guaranty, whereby the firm became dissolved. Before that event the plaintiff had been in the habit of endorsing the paper of the firm; and on the occasion of each endorsement, they had given him their note for a corresponding amount, endorsed by the defendant. The guaranty in question was given at the instance of the plaintiff, who suggested that it would be a more convenient method of transacting the business. When the guaranty was given there were notes outstanding against the firm which were endorsed by the plaintiff to an amount equal to the two notes hereinafter mentioned; and upon receiving the guaranty the plaintiff gave up the notes he held by way of indemnity, bearing the defendant's endorsement. On the 25th July, 1842, S. R. Howlett made a note for $400, payable to the order of H. T. Meech, at the Albany City Bank, ninety days after date; and on the 10th September, following, he made another note for $2150, payable to the order of the plaintiff, sixty-three days after date, at the same bank. Both these notes were signed "S. R. Howlett, for the late firm of Peck, Howlett & Foster;" and were endorsed by the plaintiff; the one last mentioned having been also endorsed by the payee; and both were discounted at the bank at which they were made payable, in renewal of notes held by the bank which were made

by the firm of Peck, Howlett & Foster, and endorsed by the plaintiff. When the notes so discounted in renewal of the former ones became payable, they were respectively protested for non-payment, and the plaintiff was charged as endorser; and he, before the commencement of the suit, paid the notes to the holders, to the amount of $2564,72. This sum the referee reported to be due to the plaintiff, provided the supreme court should be of the opinion that the notes were such as the guaranty contemplated, and provided the guaranty was a valid undertaking within the statute of frauds. The cause was twice argued, for the reason stated in the opinion of the chief justice.

*M. T. Reynolds*, for the plaintiff.

*N. Hill, Jr.* for the defendant. 1. The consideration is not sufficiently stated to comply with the statute. (26 *Wend.* 341; 5 *Barn. & Adolph.* 1109; 1 *Crompt. & J.* 461.) 2. No consideration is alluded to for the past endorsements which the plaintiff had made. As to those it is clearly void, and the promise being an entire one, no part of it can be enforced. (1 *Perry & Davison*, 477; *Chitty on Cont.* 519; 5 *Cow.* 162; 15 *Pick* 159; 1 *Bing. N. C.* 761.)

JEWETT, J. The first question presented by the report of the referee is, whether the agreement on which the suit is brought, is within the statute of frauds. " In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged therewith." 2. " Every special promise to answer for the debt, default or miscarriage of another person.". (2 *R. S.* 135, § 2.) This agreement, by its terms, is plainly intended to bind the defendant to answer as well for a debt theretofore contracted, by Peck, Howlett & Foster, and protected by the plaintiff's endorsement, as for subsequent engagements of that firm which he should endorse. It is, therefore, such an agreement

as the statute declares void, unless the consideration be expressed therein. (3 *Kent's Com.* 87, § 44, 1*st ed.*)

The next inquiry is, whether the consideration of the agreement is sufficiently expressed therein. Previous to the revised statutes, the rule, although at times doubted, was well settled in this state and in England, that to render a memorandum or agreement in writing valid under the statute of frauds, it was required that the consideration for the promise, as well as the promise itself, should be expressed therein. That the word agreement, required by the statute to be in writing, comprehended the consideration as well as the promise, and that the omission could not be supplied by parol proof. (*Sears* v. *Brink,* 3 *John. R.* 209 ; *Leonard* v. *Vredenburgh,* 8 *id.* 29 ; *Bailey & Bogert* v. *Freeman,* 11 *id.* 221 ; *Nelson* v. *Dubois,* 13 *id.* 175 ; *Rogers* v. *Kneeland,* 10 *Wend.* 219 ; *Wain* v. *Warlters,* 5 *East,* 10 ; *Saunders* v. *Wakefield,* 4 *B. & Ald.* 595 ; *Jenkins* v. *Reynolds,* 6 *Moore,* 86 ; *Chit. on Cont.* 517, *ed.* 1842.) Under this rule, the question arose, what amounted to an expression of the consideration, upon the face of the writing? Mr. Justice Nelson, in *Rogers* v. *Kneeland,* reviewed some of the leading English cases on this question, and came to the conclusion that "a consideration implied or inferred from the terms of the instrument, is as effectual as if expressly appearing on its face. It is a general principle," he said, "applicable to all instruments or agreements, that whatever may be fairly implied from the terms or language of an instrument, is, in judgment of law, contained in it."

In the case of *Bewley* v. *Whitford,* (1 *Hayes' Irish Exch. R.* 356,) Joy, Ch. Baron, after a full review of the cases as they stood in 1832, came to this result—"that the consideration must clearly appear upon the guaranty itself, either by express statement or necessary implication." This question was considered in the case of *Packer* v. *Willson,* (15 *Wend.* 343,) which arose since the revised statutes. The defendant, with a view to gain time for the makers of two existing notes held by the plaintiff, and which were past due, signed a guaranty endorsed upon each of them in these words, "I guaranty the

payment of the within note in six months." In a suit on the guaranty, Chief Justice Savage, after noticing the construction which had been given to the former statute of frauds, and the doctrine that a consideration might be made out by inference, came to the following conclusion : "It was thought by the revisers and the legislature that the most proper way for courts to find out the consideration of an agreement was, not to infer or imply or spell out the consideration ; but after the passing the revised statutes, the party should express the consideration. It is argued by the plaintiff's counsel, that the revised statutes have not altered the rule in this respect ; and it may be conceded that the only difference is between the words express and imply, but that is a very material one in the present case. I consider the statute cannot be misunderstood ; the consideration must be expressly contained in the agreement. The consideration is an important part of every agreement, and necessary to its validity ; and the legislature intended that it should plainly appear upon the face of the instrument." The same question again came under consideration in *Douglass* v. *Howland,* ( 24 *Wend.* 35.) The action was upon a guaranty, *under seal,* and expressed to be "for value received." The opinion of the court was delivered by the late Mr. Justice Cowen, who held that the statute had no application to instruments under seal. He was also of opinion that the words "for value received" were a sufficient expression of a consideration. Upon the particular point now under consideration, he said, "The difference between the old and new statute, as mentioned by the revisers in their note, is 'the requiring the consideration of the agreement to be specified.' (3 *R. S.* 656, 2*d ed.*) The marginal note to *Wain* v. *Warlters* is, that the agreement was holden void, because the consideration was not stated. Whether we say it must be expressed as in the statute, specified as in the notes, or stated as in East, it appears to me the intent must be the same. The principle is, that the consideration, being an important part of the agreement, should be made apparent in writing, as well as the promise." And again ; "Whatever then, may be fairly implied from the language, is expressed.

It strikes me that the words *expressed, specified* and *stated,* convey the same idea, and that although one is used in the statute, another in the revisers' notes, and the third in East, no argument can arise from this diversity of language to show that courts are at liberty to *infer, imply,* or *spell out* the consideration of a promise. It would seem to be immaterial whether we say that the consideration must be expressed, specified or stated—as the use of either word conveys the same idea, of something being represented or set down, declared or designated in writing; and whenever a written simple guaranty to answer for the debt or default of another is presented, the court is not now, if it was before the revised statutes, at liberty to infer or imply any thing to exist between the parties to it, not expressed, specified or stated therein. I do not know that I correctly comprehend the idea advanced, that "whatever may be fairly implied from the language used, is expressed." If it is that what the court may conjecture to have been in the minds of the parties, may be said to be expressed in the instrument, I cannot assent to the proposition. I do not think that because one thing may be inferred by fair implication from the existence of another, that it can be therefore said to be expressed. I agree with the learned judge, that "The principle is, that the consideration being an important part of the agreement, should be made apparent in writing, as well as the promise," and that the statute does not require that either should be expressed in any particular form of language—so long as both promise and consideration are expressed in the writing. The statute does not, in my judgment, uphold such promise when the consideration is not visible by the writing evidencing the promise. It is said that to imply a consideration in such a case as the guaranty in *Packer* v. *Willson,* above referred to, "requires the merest straining of the fancy," and yet in the case of *Shortrede* v. *Cheek,* (1 *Adol. & Ellis,* 57,) it seems to have been thought that the consideration in that guaranty could be quite easily implied. I am not able to see the supposed advantage the latter case has over the former in supplying the guaranty with a consideration by implication. In the first of these cases we

have seen that the plaintiff held a promissory note which was past due, and a third person (the defendant) wrote and signed an undertaking to pay the amount in six months. The consideration of this promise is not expressed in the writing. But in the other case, the plaintiff held the note of the defendant's son, and a further indebtedness against the son, evidenced by a memorandum. The defendant wrote to the plaintiff as follows: "Sir—You will be so good as to withdraw the promissory note, and I will see you at Christmas, when you shall receive from me the amount of it, together with the memorandum of my son's, making in the whole £45." In this case it was held that the consideration was sufficiently expressed. A man of business and ordinary intelligence, on being presented with the note and guaranty referred to in the first mentioned suit, and observing that the latter bore date after the note had become due, would, I think, very readily conjecture that the guaranty was signed to obtain delay for the maker. But the same person being presented with the letter in the other case, without the parol proof to connect the note and letter, and asked to guess what note the letter referred to, I apprehend would not find the language sufficiently expressive on that point to enable him to infer that it related to the note of the defendant's son; and yet the court, in that case, with the aid of the parol proof, held that a sufficient consideration was stated within the statute; while in the former it was held, and I think correctly, that the guaranty was void for want of the expression of a consideration.

It is plain that there is no consideration expressed, stated or specified in the writing upon which this suit is brought, for the promise contained in it; and if it be conceded that the statute would be satisfied if the consideration could be fairly implied from the language of the writing, I do not see any certainty of hitting on the true one, if an attempt should be made. There are several considerations which, without much ingenuity, might be conjectured. In *Cole* v. *Dyer*, (1 *Cromp. & Jer.* 461,) Lord Lyndhurst is reported to have said, that when "two distinct considerations may, with equal probability, be inferred

as the inducement for the engagement, the writing is not taxen out of the operation of the statute of frauds."

I see no ground upon which this action can be sustained.

BEARDSLEY, J.   It admits of no doubt that after the decease of Daniel Peck, by which the firm of Peck, Howlett & Foster was dissolved, the surviving members might, if they thought proper so to do, continue to transact business in the name of the late firm.   They were at liberty to adopt this or any other name, in carrying on a joint business, whether general in its character, or limited to the winding up of that of the late firm; and if this name had been so adopted by Samuel R. Howlett and Ezra Foster, contracts duly executed by either for such new firm, would be obligatory on both.   The usual form of executing copartnership contracts, as bills and notes, is by signing the copartnership name alone. But it is not indispensable that the execution should be in that form; for all the members of a firm may be bound by the name of one of their number, when signed for all, that being expressed on the face of the writing.   (3 *Kent,* 41, 5*th ed.; Coll. on Partnership,* 228; *Story on Agency,* §§ 37, 154, 155; *Chitty on Bills,* 56, 59, 10*th Am. ed.*)   In this case the notes of July 28th and September 10th, may have been given, and such indeed seems to have been the fact, in the course of winding up the business of the late firm of Peck, Howlett & Foster, and although signed by "*S. R. Howlett, for the late firm of Peck, Howlett & Foster,*" they may have bound both the surviving members of that firm.

One of the questions submitted by the referee is, whether the notes above mentioned, "are such notes as are described in the" agreement executed by the defendant to the plaintiff, and upon which this action was brought.

The referee has found that these notes were executed by S. R. Howlett, in the form in which they appear, with the assent and concurrence of Foster, and were used in the process of winding up the business of the late firm of Peck, Howlett & Foster, having been endorsed by the plaintiff for that purpose at the request of the surviving members, Howlett and Foster.

Such being the facts, the notes and endorsements were, as I think, precisely such as were contemplated by one branch of the defendant's agreement. That agreement, it will be ob· served, was executed after the death of Peck, and when the late firm of which he was a member had ceased to exist. The firm is referred to in the agreement as the *late* firm ; its dissolution was therefore known to the defendant when the agreement was executed. One branch of this agreement undertakes to provide for endorsements previously made for that firm, and while it had an existence ; but the other, and now the only material branch of the contract, has reference to endorsements thereafter to be made, and which are described in the contract as endorsements the plaintiff might thereafter make " for the late firm of Peck, Howlett & Foster." It would be absurd to understand this literally as written ; for in the nature of things it was impossible endorsements could thereafter be made *for a firm* which had already ceased to exist. Some meaning must be given to the clause, and I cannot doubt that all parties intended by the words used, to indicate such endorsements as might be made for the surviving members of the late firm in bringing its concerns to a close. In common parlance these would be made for the late firm ; and in that sense it is very clear, as I think, the defendant intended his engagement should be understood. It has been acted on in that sense by all parties, and in that sense it should be construed and enforced against the defendant, unless his promise is made void by the statute of frauds. I proceed to a consideration of that, which is the only important question in the case.

This action is founded on a "special promise to answer for the debt, default or miscarriage of" the two surviving members of the late firm of Peck, Howlett & Foster, and unless the agreement including and expressing the consideration is in writing, it is void. (2 *R. S.* 135, § 2.) Excluding so much of the defendant's engagement as refers to past endorsements, and which is not material in this case, the residue of his agreement, as written, was in substance and effect, that if the plaintiff would endorse notes for S. R. Howlett and E. Foster, to be

used in closing the business of the late firm of Peck, Howlett & Foster, the defendant would indemnify him "for any such endorsements" not exceeding three thousand dollars. This promise is certainly explicit in its terms, and, as I think, is founded on a consideration clearly expressed in the writing. It is the endorsement by the plaintiff, of one or more notes, thereafter to be made by the surviving members of the late firm, not exceeding three thousand dollars in amount, which constitutes that consideration; the agreement as written, says, "for *any* such endorsement" I will "hold you harmless." This is very explicit and can hardly be mistaken. Each endorsement within the prescribed amount, is expressed and declared to be a consideration for the special promise to hold the plaintiff harmless; and the whole number of such endorsements constitutes the entire consideration which upholds the promise to indemnify the plaintiff. The promise is not absolute, but con tingent, depending upon what might be done by the plaintiff. He must endorse before any liability would attach to the defendant; but an endorsement being made, the promise becomes absolute. Endorsing notes for a third person is undoubtedly a sufficient consideration for a promise of indemnity; and this consideration is here expressed in the writing. It is therefore, as it seems to me, a full compliance with this requisition of the statute, and the promise is binding upon the defendant.

I refer to the opinion of the late Mr. Justice Cowen, in *Douglass* v. *Howland*, (24 *Wend.* 35,) as containing a correct summary of the law applicable to such a case as this. He has shown very conclusively, as it seems to me, that although the present statute *expressly* requires the consideration of "every special promise to answer for the debt, default, or miscarriage of another person" to be expressed in the written contract, still this is only what was virtually required by the former statute of this state, as well as by the English statute, on the same subject. Neither provision could be satisfied with any thing short of *expressing* the consideration in the written agreement. The difference, and the whole difference, as far as I see, is that by one the requisition is *expressly* made, and in the others it

Staats *v.* Howlett.

is necessarily *implied.* The requirement is imperative in eacn and as to this point these statutes are in legal effect identical.

I think the plaintiff is entitled to judgment on the report

BRONSON, Ch. J. As my brethren differed in opinion, and I was not in court on the first argument, the case could not be decided. We have now had a second argument, and I fully concur in the opinion of my brother Beardsley, that the plaintiff is entitled to judgment. In relation to agreements of this kind, the present statute of frauds only says *in terms,* what the former statute said *in legal effect,* that there must be a writing " expressing the consideration." As to past endorsements, I agree that no consideration appears on the face of the instrument; but as to future endorsements, the consideration is so plainly expressed that no one can fail to see it. The defendant writes to the plaintiff—" I hereby obligate myself to hold you harmless for any endorsements you may make for the late firm of Peck, Howlett & Foster." This is fully equivalent to saying, " if you will endorse, I obligate myself to hold you harmless." The plaintiff's endorsement is the consideration for the defendant's undertaking. The question is not about the motive or inducement for the promise as between the defendant on the one side, and Howlett & Foster on the other. It is a matter of no importance whether Howlett & Foster gave the defendant a sum of money for this letter of credit, or whether, as between them, the undertaking was wholly gratuitous. The question is about a consideration as between the parties to the written agreement; and as to that, the defendant says, " if you will endorse, I will hold you harmless." That endorsing is a good and sufficient consideration for the promise has not been questioned by any one; and that the consideration is plainly expressed, appears to me to be equally undeniable. It is the ordinary case of a commercial guaranty. A writes to B., " If you will lend C. a sum of money, or sell him goods on credit, I will see you paid:" or, "I will pay, or see you paid, for any money you may loan, or goods you may sell to C. on credit:" or, "I will *hold you harmless* for any credit for money or goods

which you may give to C." In each and all of these cases the consideration as between A. and B. is apparent. Whether there was, or was not, a valuable consideration as between A. and C. is a matter of no moment. If this contract should be held void, it would overthrow most of the guaranties and letters of credit which now enter so largely into the transactions of the commercial world.

Judgment for the plaintiff.