## THE UNION BANK OF LOUISIANA vs. THE EXECUTORS OF JOHN G. COSTER.

A general letter of credit authorizes any person to whom it is presented to act upon the proposition therein contained ; and when any person does act thereon, a contract arises between him and the maker of the instrument, in the same manner as if it had been addressed to him by name.

And such a letter of credit, if it authorize more than a single transaction with the party to whom it is granted, may be honored by several persons successively, keeping within the aggregate limit specified in the instrument.

Where A. by a general letter of credit, undertook to accept and pay drafts to be drawn by B. to a given amount, and C. at the foot of the letter, at the same time, wrote and signed a guaranty in these words, " I hereby agree to guarantee the due acceptance and payment of any draft or drafts issued in virtue of the above credit;" *held*, that the letter and guaranty should be read and construed together, that the consideration of the guaranty was sufficiently expressed in the writing, and therefore that the guaranty was a valid undertaking within the statute of frauds.

Contracts of guaranty, although required by the statute to be in writing, are subject to the same general rules of construction as other contracts.

A promise to do an act in consideration of some act to be done by the promisee, implies a request, and such a promise is made upon sufficient consideration. And if the promise be in writing, the consideration therefor is *expressed* so as

[203]

to uphold the contract within the statute of frauds. The performance of the acts to be done by the promisee, may be proved by parol.

A person who gives a general letter of guaranty, absolute in its terms, is liable to a party who accepts it and makes advances on the faith thereof, without notice from the latter that he has accepted or made the advances.

In an action against a surety the omission to give notice of the default of the principal can not in any case be set up as a defence, unless it be shown that damage has been sustained in consequence of the neglect.

On the 29th of May, 1841, Heckscher & Coster, merchants of the city of New-York, executed and sent to Kohn, Daron & Co., merchants in New Orleans, a letter of credit as follows:

"New-York, 29 May, 1841.

Sir: We hereby agree to accept and pay at maturity any draft or drafts on us at sixty days' sight, issued by Messrs. Kohn, Daron & Co. of your city, to the extent of twenty-five thousand dollars, and negotiated through your bank. We are respectfully, sir, your obd't serv'ts.    HECKSCHER & COSTER."

At the foot of the letter of credit was a guaranty executed at the same time by John G. Coster, as follows:

"I hereby guarantee the due acceptance and payment of any draft issued in pursuance of the above credit.

JOHN G. COSTER."

On the faith of the above letter of credit and guaranty, the Union Bank of Louisiana, in January, 1842, purchased two drafts drawn by Kohn, Daron & Co. on Heckscher & Coster, amounting to about $9000, which were accepted and paid by the latter according to their agreement. On the 14th of February, 1842, the bank, under the same letter of credit, purchased another draft for $4000, at sixty days' sight, drawn by and upon the same parties; and on the 26th of that month this draft was presented to Heckscher & Coster, in New-York, for acceptance, which they refused. On the 9th of April, 1842, the attorney for the Union Bank gave notice to John G. Coster that he had received the draft for collection, and on the 2d of May, 1842, formal notice of the protest of the draft for non-payment was served on Mr. Coster. In August, 1844, John G. Coster died, and the Union Bank subsequently brought this suit in the su-

perior court of the city of New-York, against his executors, upon the guaranty above set forth, for the purpose of recovering the amount of the draft. On the trial, in addition to the facts already stated, it appeared that prior to any of the above mentioned transactions with the Union Bank, the said letter of credit and guaranty had been held by the City Bank of New Orleans, which, upon the faith thereof, in December, 1841, had purchased a draft of $10,000 drawn by Kohn, Daron & Co. upon Heckscher & Coster. The letter and guaranty were not addressed to any particular person or bank.

The plaintiffs' counsel requested the court to charge the jury that the plaintiffs could not recover upon the grounds, 1. That the guaranty was void by the statute of frauds. 2. That the plaintiffs had not shown any notice to the defendants' testator of their acceptance of, and intention to act upon, the letter of credit and guaranty. 3. That the letter of credit and guaranty had been first used at the City Bank of New Orleans, and that thereby that bank became the party to the contract, and no action could be maintained upon it by the present plaintiffs. 4. That the plaintiffs did not give to the guarantor due notice of the default of the principal promisors. 5. That the letter of credit had been revoked before the negotiation to the plaintiffs of the draft in question. The court overruled the 1st, 2d, 3d and 4th propositions, and as to the 5th, instructed the jury that if the letter of credit had been revoked, and the plaintiffs had notice of the revocation before they purchased the bill, the defendants were entitled to a verdict. The defendants excepted. The jury found for the plaintiffs, and after judgment the defendants appealed to this court. (*See* 1 *Sandf. Sup. Court Rep.* 563.)

*Wm. M. Evarts*, for appellants, I. The alledged guaranty of the defendants' testator is void by the statute of frauds. *First.* Because the memorandum does not express any consideration; and *Secondly.* Because it does not contain any name or description of the person or party to whom the promise to answer for the debt or default of another was made. (2 *R. S.* 135, § 2; *Davis* v. *Shields*, 26 *Wend.* 350; *Parker* v. *Wilson*,

15 *id.* 343, 6, 7 ; *Manrow* v. *Dunham,* 3 *Hill,* 584 ; *Parker* v. *Bradley,* 2 *id.* 584 ; *Hunt* v. *Brown,* 5 *id.* 145 ; *Rogers* v. *Kneeland,* 13 *Wend.* 114 ; *Newcomb* v. *Clark,* 1 *Denio,* 226.)

II. The letter of Heckscher & Coster does not contain any express consideration for their promise to accept and pay the bills of exchange therein referred to. Much less does the memorandum signed by John G. Coster, annexed to that letter, as a collateral undertaking express the "consideration" in "writing" for the promise charged in the declaration. It is, therefore, clearly void by the words of the statute. (2 *R. S.* 135, § 2 ; *Forth* v. *Stanton,* 1 *Saund. Rep.* 211.)

III. If the memorandum contains a valid guaranty under the statute, still the defendants' testator was not liable. 1. Because the plaintiffs never gave to the guarantor such notice of their acceptance of, or intention to act upon the credit of the guaranty, as is requisite to fix the guarantor's liability. (*Adams* v. *Jones,* 12 *Peters,* 213 ; *Russell* v. *Clark,* 7 *Cranch,* 69 ; *Edmondson* v. *Drake,* 5 *Peters,* 624 ; *Douglass* v. *Reynolds,* 7 *id.* 113 ; *Lee* v. *Dick,* 10 *id.* 482 ; *Reynolds et al.* v. *Douglass,* 12 *id.* 497.) 2. If this notice be not essential in the case of a guaranty determinate in its subject matter, absolute in amount, and expressly directed and delivered to a particular person, it is so when the promisee is indeterminate, and the subject and amount are vague and open. For until such notice is given and received it is a mere overture or proposition of guaranty, and none of the requisites of a binding contract exist. (*Beekman* v. *Hale,* 17 *John.* 134 ; *Stafford* v. *Low,* 16 *id.* 67.) 3. The transaction with the "City Bank" fixed that institution as the party to the letter of credit issued by Heckscher & Coster ; and that bank became (if any party became) the only person to whom the guaranty was addressed. It was an entire contract incapable of being apportioned to different parties for part performance by and to each. 4. When the contract became once fixed to a particular promisee, it could not be negotiated, shifted or transferred to another promisee. 5. If capable of either apportionment or transfer in respect to the promisee, the guarantor can

not be held to the substituted promisee, unless upon his assent, express or implied, to such substitution. No notice even here is proved or alledged. 6. Should Kohn, Daron & Co. be deemed the parties to the guaranty, (it not being a negotiable contract,) the suit, though for the benefit of the plaintiffs, should be in the name of Kohn, Daron & Co.

IV. The plaintiffs did not give to the guarantor such notice of the default of the principal promisors as was necessary to fix his liability. The bill was protested for non-acceptance, February 26th, 1847, at the city of New-York, where the drawers and the guarantor resided, and notice of non-acceptance was not given until April 9th ensuing.

*B. W. 'Bonney,* for respondents. I. The agreement (or let ter of credit) granted by Heckscher & Coster, to Kohn, Daron & Co, to which the guaranty of John G. Coster is subjoined, is a valid contract in the hands of the Union Bank, and covers the bill now in question. And it was not the less a valid contract in the hands of the Union Bank on account of the prior transaction with the City Bank of New Orleans. The letter was addressed to no particular person, and might be successively delivered to and acted upon by different parties within the amount specified.

II. The contract of guaranty upon which the suit in the superior court was brought, is a legal obligation, made in due form, and sufficiently expressing the consideration to charge John G. Coster, the maker; and under it the defendants below, as his representatives, are liable for the amount for which judgment was rendered. In construing the contract and determining its validity and effect, the guaranty and the agreement to which it is subjoined and refers must be taken together and considered as forming but one instrument, according to the uniform rule of construction in like cases. (*Rogers* v. *Kneeland,* 10 *Wend.* 218; *same case in error,* 13 *id.* 114; *Brickhead* v. *Brown,* 5 *Hill,* 634; *same case in error,* 2 *Denio,* 375.) No particular phraseology or form of words is necessary to be used for expressing the consideration of any contract. It is enough if from the whole instrument it is manifest that there is a con-

sideration. (*Douglas* v. *Howland,* 24 *Wend.* 35 ; *Allen* v. *Ja-quish,* 21 *id.* 628 ; *Morley* v. *Boothby,* 10 *Moore,* 395.) A contract of guaranty, like any other contract, may be made and sustained upon a consideration of benefit to the guarantor or detriment to the party receiving the guaranty ; and it is not necessary that it should be a consideration moving between the parties to such contract. (*Smith* v. *Weed,* 20 *Wend.* 184 ; *Watson* v. *Randall,* 20 *id.* 201 ; *Morley* v. *Boothby,* 10 *Moore,* 395.) The consideration for the guaranty by John G. Coster of the acceptance and payment of the bill in question was the receiving of that bill by the Union Bank, on the faith and credit of the agreement and guaranty, and the payment of the money therefor : and that consideration is sufficiently expressed in the instrument of guaranty and the agreement to which it is subjoined. (*Fell on Guarantees,* 36 ; *Pitman on Pr. & Surety,* 62 ; 40 *Law Library,* 57 ; *Wain* v. *Walters,* 5 *East,* 10 ; *Shortrede* v. *Cheek,* 1 *Ad. & Ellis,* 57 ; 1 *R. L. of* 1813, *p.* 78, § 11 ; *Leonard* v. *Vredenburgh,* 8 *John.* 29 ; *Bailey* v. *Freeman,* 11 *id.* 221 ; *Nelson* v. *Dubois,* 13 *id.* 175 ; *Farley* v. *Cleveland,* 4 *Cowen,* 432 ; *S. C. in error,* 9 *id.* 639 ; *Rogers* v. *Kneeland,* 10 *Wend.* 218 ; *S. C. in error,* 13 *id.* 114 ; 2 *R. S.* 1830, *p.* 135, § 2 ; *Marquand* v. *Hipper,* 12 *Wend.* 520 ; *Douglas* v. *Howland,* 24 *id.* 35 ; *Parks* v. *Brinckerhoff,* 2 *Hill,* 663 ; *Manrow* v. *Dunham,* 3 *id.* 584 ; *Walrath* v. *Thompson,* 4 *id.* 200 ; *Hunt* v. *Brown,* 5 *id.* 145 ; *Potter* v. *The Ontario Mut. Insurance Co.* 5 *id.* 147.)

III. The contract by John G. Coster is *an absolute and unconditional undertaking that Heckscher & Coster shall accept and pay* all bills to the amount of $25,000 drawn under their letter of credit ; and therefore, under the law of New-York, notice of the acceptance of the guaranty or of the default of Heckscher & Coster was not necessary to charge him. (*Allen* v. *Rightmere,* 20 *John.* 365 ; *Clark* v. *Burdett,* 2 *Hall's S. C. R.* 197 ; *Douglas* v. *Howland,* 24 *Wend.* 35 ; *Whitney* v. *Groot,* 24 *id.* 82 ; *Luqueer* v. *Prosser,* 1 *Hill,* 256 ; *S. C. in error,* 4 *id.* 420 ; *Miller* v. *Gaston,* 2 *id.* 188 ; *Smith* v. *Dann,* 6 *id.* 543 ; *Train* v. *Jones,* 11 *Vt. R.* 444 ; *Thrasher* v. *Ely,* 2 *Smed. &*

*Mar.* 139; *Harris* v. *Ferrand, Hardr. R.* 36; *Brice* v. *Carre,* 1 *Lev.* 47 ; *White* v. *Woodward,* 5 *Man. Gr. & Scott,* 57 *Eng. Com. L. Rep.* 810.)

IV. If, however, it should now be held that notice of the acceptance of the guaranty and receiving the bill drawn under it, and of the default of Heckscher & Coster in not accepting and paying such bill was necessary, it is fully proved that such notice was given in reasonable time, and sufficient to charge John G. Coster and his representatives. There is no proof or pretence of damage to John G. Coster, by reason of notice not being given sooner than it was given. (*Douglas* v. *Reynolds,* 7 *Peters,* 113; *Reynolds* v. *Douglas,* 12 *id.* 497; *Cremer* v. *Higginson,* 1 *Mason,* 323; *Russell* v. *Perkins, id.* 368; *Wildes* v. *Savage,* 1 *Story,* 22; *Craft* v. *Isham,* 13 *Conn. Rep.* 28; *Seaver* v. *Bradley,* 6 *Greenl.* 60; *Train* v. *Jones,* 11 *Vt. Rep.* 444; *Babcock* v. *Bryant,* 12 *Pick.* 133; *Salisbury* v. *Hale,* 12 *id.* 416.)

PRATT, J. delivered the opinion of the court. Contracts of guaranty differ from other ordinary simple contracts only in the nature of the evidence required to establish their validity. The statute requires every special promise to answer for the debt, default or miscarriage of another, to be in writing subscribed by the party to be charged thereby, and expressing therein the consideration; and no parol evidence will be allowed as a substitute for these requirements of the statute. But in other respects the same rules of construction and evidence apply to contracts of this character which apply to other ordinary contracts. Hence the consideration which will support a contract of this character, as in other cases, may consist in some benefit to the promisor, or some other person at his request, or some trouble or detriment to the promisee. (20 *Wend.* 184, 201; *Theobald on Pr. & Surety,* 3, 4; 2 *H. Bl.* 312.) Nor is any particular form of words necessary to be used for expressing the consideration; but it is enough if from the whole instrument the consideration expressly or by necessary inference appears; so that it be clear that such and no other was the consideration

upon which the promise was made. (24 *Wend.* 35 ; 21 *id.* 628 ; 4 *Hill,* 200; 8 *Ad. & El.* 846 ; 5 *Barn. & Ad.* 1109.) And the rule allowing two or more instruments given at the same time and relating to the same subject matter to be construed together as one instrument, applies also to this class of contracts; so that when a guaranty is given at the same time with the principal contract and forms a part of the entire transaction, if the consideration be stated in the principal contract, though none be stated in the guaranty, it will suffice. (8 *John.* 35 ; 9 *Wend.* 218 ; 18 *id.* 114.) So also as in other cases, parol evidence of the circumstances under which the contract was made may be given, to aid the court in giving a true construction to ambiguous terms therein, or to show that separate contracts relate to the same subject matter.

It should also be observed here, that our statute in terms only requires the contract to express therein what it had been well settled the statute of Elizabeth required it to contain, and the same rules of construction should therefore be applied in cases under both statutes. (24 *Wend.* 35.)

With these observations in relation to the law governing cases of this kind, we come to the consideration of the contract in question.

The letter of credit of Heckscher & Coster is an original undertaking on the face of it to accept any drafts to be drawn upon them at sixty days by Kohn, Daron & Co. to the extent of $25,000, and negotiated by the bank to whom it is addressed. The consideration of their undertaking appears very plainly from the instrument. It is an open proposition to the bank to which it is addressed, that if it will purchase the drafts drawn by Kohn, Daron & Co. they will accept and pay the same. As soon therefore as the bank complied with the proposition the contract was closed, and the rights and liabilities of the parties became fixed. Upon this part of the contract there can be no question that a sufficient consideration appears upon the face of the contract to uphold it. But it requires no greater or different consideration to support a guaranty than to support an original promise. The only difference in the two cases consists in the former requiring the consideration to appear upon the

contract itself, whereas the consideration to support the latter may be proved by parol. The question therefore in this case is whether the consideration of the undertaking of the defendants' testator appears upon the instrument itself, or rather whether the two instruments may be read together so that the same consideration shall support both.

The guaranty is without date and at the foot of the letter of credit. Independent of the parol testimony it should be deemed to have been made at the same time. It is addressed to the same person and relates to the same subject matter. It should therefore, within every rule of construction, be deemed part of the same transaction, and the two instruments should be read together as one contract. The two would read thus : "In consideration that you, the Union Bank of Louisiana, will purchase any draft or drafts to be issued by Kohn, Daron & Co. upon Heckscher & Coster, at sixty days, not exceeding $25,000, we the said Heckscher & Coster will accept and pay the same ; and I the said John G. Coster agree that Heckscher & Coster shall accept and pay the same." Now it seems to me clear that such is the fair reading of the two contracts taken together ; and although the contract of John G. Coster may be deemed collateral, yet had the two been drawn in the above form no question could have been raised upon the statute of frauds. But what may be fairly inferred from the terms of a contract should be considered, for the purpose of giving it effect, as contained in it ; and this rule applies as well to collateral as to original undertakings. (5 *Hill*, 147.)

There is a wide difference between the guaranty of an existing debt and the guaranty of a debt to be contracted upon the credit of the guaranty. It is the difference between a past and future consideration. A past consideration, unless done at the request of the promisor, is not sufficient to support any promise. But a promise to do an act in consideration of some act to be done by the promisee implies a request, and a compliance on the part of the latter closes the contract and makes it binding. And although it may be necessary from the nature of the case to prove performance by parol, yet such evidence is no violation

of the statute requiring the consideration to be in writing. The consideration of the promise is expressed, and the parol evidence is only used to show, not what the consideration is, but that the act which constitutes that consideration has been performed. Any other rule would require every person to whom a letter of credit is directed to accept the same in writing before the drawer would be bound. For instance, a letter drawn in the country and addressed to a merchant in the city, guaranteeing the responsibility of the person for whose benefit the same was drawn for a given bill of goods to be sold to him, would require a written acceptance by the city merchant before it would be binding upon the drawer. No such strict rule can be found supported by any adjudication. I am therefore satisfied that the consideration of the guaranty in the case at bar sufficiently appears in the contract, and that the same was valid and binding upon the defendants' testator. I have not been able to find a case in our own or the English courts which would conflict with the doctrine above advanced; but on the contrary, the books are full of cases similar in their circumstances to this case, where the guaranty has been sustained. (8 *John.* 35; 11 *id.* 221; 10 *Wend.* 218; *S. C. in error,* 13 *id.* 114; 12 *id.* 218; 24 *id.* 35; 4 *Hill,* 200; 4 *Denio,* 559; 1 *Ad. & E.* 57; 5 *Bligh's N. R.* 1; 7 *Mees. & Wels.* 410; 9 *East,* 348; 1 *Camp.* 242; 3 *Brod. & Bing.* 211; 4 *C. & P. N. P.* 59; 8 *Dowl. & Ryl.* 62.)

The next question raised in the case is as to notice of acceptance. We must hold the law to be settled in this state that where the guaranty is absolute no notice of acceptance is necessary. Judge Cowen, in *Douglass* v. *Howland,* (24 *Wend.* 35,) and Judge Bronson, in *Smith* v. *Dann,* (6 *Hill,* 543,) examined the cases at length upon this question, and they showed conclusively that by the common law no notice of the acceptance of any contract was necessary to make it binding, unless it be made a condition of the contract itself, and that contracts of guaranty do not differ in that respect from other contracts. In this case the only condition of Coster's undertaking was that the bank should purchase the drafts to be issued by Kohn, Daron & Co., and upon complying with that condition the rights

of the parties became fixed, and the contract binding. There is nothing in the contract from which we can infer that it was the intention of the parties that notice should be given in order to fix the guarantor. No more is required to make the guarantor liable than to make Heckscher & Coster, and the only notice to them necessary was the presentment of the drafts for their acceptance within a reasonable time. (*Allen* v. *Rightmere,* 20 *John.* 365; *Clark* v. *Burdett,* 2 *Hall,* 197; *Cro. Jac.* 287, 685; 2 *Salk.* 457; *Vin. Ab. Notice, A.* 3; *Com. Dig. Plead. C.* 75; 2 *Chitty,* 403.)

As to notice of non-acceptance and non-payment of the bills by the drawees, that can only involve the subject of laches on the part of the holders of the drafts, and all the cases, both in England and in this country, concur in holding that this defense can only be set up to an action against the surety in cases where he has suffered damage thereby, and then only to the extent of such damage. (7 *Peters,* 117; 12 *id.* 497; 1 *Mason,* 323, 368; 1 *Story,* 22; 13 *Conn.* 28; 5 *Man. & Gran.* 559; 13 *Mees. & Wels.* 452; 3 *Kent's Com.* 122.) If, therefore, it were necessary in this case to give any notice, no evidence has been given showing that the defendants, or the guarantor, suffered any loss in consequence of the want of such notice.

The only remaining question, therefore, worthy of consideration in this case, arises out of the fact that another bank had previously purchased drafts drawn in pursuance of the letter of credit and guaranty. It is claimed that by such purchase the contract became a fixed and binding contract between such bank and the promisor, and thereby lost its negotiable character, and became located so that no other person or bank could purchase drafts upon the credit of it.

The guaranty, in this case, was manifestly intended to accompany the letter of credit, and is subject, in this respect, to the same construction. If, therefore, it was competent for Kohn, Daron & Co. to draw several drafts not exceeding the limit in the bill of credit specified, and to negotiate them at different banks, and Heckscher & Coster would be bound by their letter of credit to accept and pay them, the guarantor would also be

liable to the same extent. As a general rule the surety is liable to the same extent as the principal, unless he expressly limits his liability. (*Theobald on Prin. and Surety*, 46.) It therefore only becomes necessary to examine the letter of credit, and ascertain whether it was intended to be limited to one particular bank, or is a general letter of credit to any and all persons who may advance money upon it. It is somewhat singular that we find so few adjudications in our courts upon a class of commercial instruments which enter so largely into the commerce and business of this country, and of the world.

In England it seems to be at this time questionable whether a party who advances money upon a general letter of credit can sustain an action upon it. (*Russell et al.* v. *Wiggins*, 2 *Story*, 214; *Bank of Ireland* v. *Archer*, 2 *Mees. & Welsby*, 383.) The reason assigned is that there is no privity of contract between them. It is there assumed that it is only a contract between the drawer of the letter and the person for whose benefit it is drawn. But in this country the contrary doctrine is well settled. Letters of credit are of two kinds, general and special. A special letter of credit is addressed to a particular individual by name, and is confined to him, and gives no other person a right to act upon it. A general letter, on the contrary, is addressed to any and every person, and therefore gives any person to whom it may be shown authority to advance upon its credit. A privity of contract springs up between him and the drawer of the letter, and it becomes in legal effect the same as if addressed to him by name. (*Russell* v. *Wiggins*, 2 *Story's Rep.* 214; 12 *Mass.* 154; 2 *Metcalf*, 381; 12 *Wend.* 393; 12 *Peters*, 207; *Burkhead* v. *Brown*, 5 *Hill*, 641; *Story on Bills;* See *Beames' Lex. Mer.* 444.)

But these general letters of credit may be subdivided into two kinds, those that contemplate a single transaction, and those that contemplate an open and continued credit, embracing several transactions. In the latter case they are not generally confined to transactions with a single individual, but if the nature of the business which the letter of credit was intended to facilitate, requires it, different individuals are authorized to make

advances upon it, and it then becomes a several contract with each individual to the amount advanced by him. Thus a general letter of credit may be issued to a person to enable him to purchase goods in the city of New-York, for a country store. The very nature of the business requires him to deal with different individuals and houses in order to obtain the necessary assortment. It has never, as I am aware, been questioned that the guarantor might be bound to several persons who should furnish goods upon the credit of the letter.

So letters are issued by commission houses in the city, to enable persons to purchase produce in the western states. The money is obtained from the local banks in those states by drafts drawn upon those houses, and upon the faith of the letters of credit. It may often happen that a single bank can not furnish the requisite amount, or it may be necessary to use money in different and distant localities. I am not aware of any question ever having been raised as to the authority of different banks to act upon the same letter of credit. It is absolutely necessary that such should be the effect of them in order to facilitate the commerce of the country, and to carry out the object of the parties in issuing the letters of credit. (*Burkhead* v. *Brown*, 5 *Hill*, 641 ; 2 *Story's Rep.* 214.)

The letter of credit in this case was evidently intended to be general; it did not contemplate a single transaction, or draft for the whole amount, but several drafts limited in the aggregate to twenty-five thousand dollars. Although the address "sir," and "your bank," is in the singular number, yet I think it was intended to be used in a distributive sense, and apply to any bank or banks who should purchase the drafts. I can see no object which the drawers should have for limiting the party for whose benefit the letter was issued to a single bank. It is said that it would enable them more readily to revoke the authority. But these letters are not issued without either undoubted confidence in the persons for whose benefit they are drawn, or upon ample security. The idea of giving notice of revocation to any party but that for whose benefit they are drawn, is never entertained by the guarantors in cases of general letters. When

they wish to provide for any such contingency the letters are framed accordingly. Again, in this case the parties themselves have treated this letter as not limited to a single bank, for they accepted bills which had been discounted by the plaintiffs.

I am, therefore, satisfied that the plaintiffs were authorized to purchase bills upon the faith of the letter and accompanying guaranty, and that the previous purchase of bills by another bank is no defence.

Whether the letters had been revoked with the knowledge of the plaintiffs before the draft was discounted by them, was a question of fact for the jury. It would clearly constitute no defence unless the plaintiffs had notice of it. The judgment of the superior court must therefore be affirmed with costs.

Judgment affirmed.