## SIMONS *v.* STEELE *& als.*

In this State, the existence of usury in a contract, even when taken advantage of in the mode prescribed by statute, can never be cause of nonsuit, unless it is manifest that three times the amount of the usury equals or exceeds the whole sum due by the terms of the contract.

Where one, by his words or conduct, causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as actually existing at the same time.

The obligation of a guarantor is that which the fair import of the language employed in the guaranty imposes upon him. If his engagement be absolute, he is not entitled to insist upon any condition.

Notice of non-payment by the principal is not necessary to charge an absolute guarantor.

Where the principal and collateral contracts are both made at the same time, and written on the same paper, and it is apparent from inspection that the collateral contract was an essential ground of the credit given to the principal debtor, the consideration of one is *prima facie* that of the other, and it is not necessary, to avoid the operation of the statute of frauds, that there should exist or be expressed in writing any other consideration than that moving between the creditor and original debtor.

Where the alleged guarantors appear to have been original parties to the contract, as well as the principal debtor, and there is nothing in the language used to prevent such a construction, the contract may be construed as a direct and absolute engagement of all the parties thereto ; the alleged guarantors being regarded as surties for the principal debtor.

Where a guaranty, or promise to pay the debt of a third person, is within the statute of frauds, so as to require the consideration of the undertaking to appear on the face of the instrument, it is sufficient if such consideration may be fairly implied from the terms of the guaranty itself.

ASSUMPSIT against the defendants, as guarantors of the New-Hampshire Central Railroad Company, on an obligation of said railroad, a copy of which (marked A,) is annexed, and makes a part of this case. A copy of the guarantee (marked B,) is also annexed, and makes a part of this case.

The execution of both instruments was admitted, and the plaintiff rested his case, — whereupon the defendants moved for a nonsuit, for the reason —

1. That no consideration appeared for the undertaking of the defendants.

2. Because it did not appear that any demand was made on the railroad, or notice given to the defendants.

3. Because it did not appear that the president of the railroad was authorized to make the contract which the defendants guarantied.

4. Because said contract was usurious.

The court overruled the motion, and a verdict was taken, by consent, for the plaintiff. Judgment to be rendered thereon, or the same to be set aside and a nonsuit entered, as the Supreme Judicial Court shall order.

[A.] MANCHESTER, N. H., January 3, 1850. Received of Hiram Simons two certificates of Northern Railroad Stock, one of four shares and one of sixty-eight shares, making seventy-two shares in all. Said stock is received for the purpose of raising money for the use of the New-Hampshire Central Railroad Company, and said company hereby agrees to return said stock to said Simons, in one year from this date, together with such per cent., after deducting actual cost and fees in raising said money, as will make twelve per cent. per annum. Said Simons to receive all dividends on said stock.

New-Hampshire Central Railroad Company,

By FRANKLIN N. POOR, Treasurer.

Approved : DAVID STEELE, President of said Company.

[B.] WE, the undersigned, guarantee the fulfillment of the above obligation, and hereby promise said Hiram Simons that said stock shall be returned at the time specified, agreeable to the above contract.

MOSES SAWYER,
BARTHOLOMEW SMITH,
DAVID STEELE,
M. A. HODGDON,
PERRY RICHARDS,
GEO. W. PINKERTON,
HORACE CHILDS.

*Morrison, Fitch & Stanley,* and *D. Steele,* of Goffstown, for the defendants.

*Clark & Smith,* for the plaintiff, took and maintained the following positions :

1. To the first objection raised, we reply, that the consideration *does* appear. The case finds that the guaranty was given at the same time the contract with the principal was made. The agreement and the guaranty are both upon one piece of paper, and, there being but one date, it must be presumed that they were both executed at the same time, and the consideration expressed in the contract will be taken as if also expressed in the guaranty.

2. But we go further. It is well settled that no consideration need appear in the guaranty, or be shown. The guaranty, being made at the same time with the original contract, became an essential ground of credit given the principal debtor, and no consideration is necessary to be shown other than that of the original agreement. The whole is one original and entire transaction. 3 Kent's Com. 122 ; Burge on Suretyship 36 ; *Hunt* v. *Adams,* 5 Mass. 358 ; *Johnson* v. *Wilmarth,* 13 Met. 416.

II. Demand and notice are not necessary.

1. This guaranty is *absolute,* not *conditional.* The stock was delivered at the same time the guaranty was given, and no part of it was to be delivered thereafter. The undertaking was to return stock received by the principal *at the very time* this guaranty was given, and not for any future delivery. Every thing had been done upon which an *absolute* promise could operate, and there was nothing left for the plaintiff to do. The time was also fixed when the stock was to be returned. No essential element is lacking to make this an *absolute* contract.

In *Beebe & a.* v. *Dudley,* 6 Foster 249, it was held that " *when the undertaking by a guarantor to pay is absolute, notice is unnecessary. This liability is fixed without demand or notice.* "

In *Salisbury* v. *Hale,* 12 Pick. 416, it was also held that notice was unnecessary ; also in *Johnson* v. *Wilmarth,* 13 Met.

416. In *Hunt* v. *Adams*, 5 Mass. 358, the question does not seem even to have been raised.

2. The case does not find that the guarantors have sustained any loss in consequence of the want of demand and notice, even if demand and notice were requisite, and therefore they cannot avail themselves of such want in defence. *Salisbury* v. *Hale*, 12 Pick. 424; *Wheaton* v. *Wilmarth*, 13 Met. 422.

3. The cases where demand and notice seem to have been required are those where the guaranty is *conditional.* Such is the case in *Beebe & a.* v. *Dudley*, 6 Foster 249 — the only case of guaranty reported in this State. *Babcock & a.* v. *Bryant*, 12 Pick. 133.

4. Even in the case of the guaranty of negotiable bills and notes, demand and notice are not necessary. *Story on Bills*, secs. 305, 372, 393-5. With much less reason then should they be required in contracts, agreements and other non-negotiable instruments.

1. As to the third objection raised by the defendants, we say that the officers signing said contract had the power to make the same by virtue of the charter of said railroad company. Pamphlet Laws, 1848, chap. 662, sec. 5, p. 628.

It has been the custom of railroad corporations to hire money from time to time in the construction of their roads, and the authority has never been questioned. There is no clause in the charter of this road or in the statutes, prohibiting it. It may well be inferred that the president and treasurer executed the contract with the knowledge and by direction of the directors. The presumption is that they acted by authority, and not without authority, especially as the defendants were the directors of the road at that time.

2. But if the president and treasurer had no authority from the directors to make said contract, the contract does not thereby fall to the ground. Instead of binding the road, they have made *themselves* liable. An agent, acting without authority from his principal, binds himself instead. This principle is well established. See *passim.*

3. But granting that the president and treasurer had no

authority to make this contract, the defendants cannot take advantage of it. In a suit between the plaintiff and the road this defence might be set up, but these defendants stand in the same relation to the plaintiff in this suit as they would if the action were founded upon a promissory note upon which they were sureties for an infant or feme covert, or other person under disability to contract. A surety upon such a note could not be discharged on such grounds.

If the fact is so, viz: that the president and treasurer acted without authority, the question is, whether the plaintiff or the defendants shall suffer. We see no reason why the loss should fall on the plaintiff. It was equally the duty of the defendants as of the plaintiff to ascertain whether the president and treasurer acted without authority, when the contract was made. But we go further and claim that they, by their act of signing the guaranty written underneath the contract, admitted it to be correct and executed by due authority, and should not now be permitted to question it, without showing fraud upon the part of the plaintiff, or his knowledge that it was executed without authority. The case does not find that the guaranty was given by the request or solicitation of the plaintiff. It may be inferred, from the two instruments taken together, that the solicitation was on the part of the defendants. There would be no safety in the transaction of business, if the defendants, after having voluntarily affixed their signatures to this contract, upon the strength of which the plaintiff was induced to part with his stock, can now excuse themselves upon such grounds.

1. If the contract is usurious, it is not thereby rendered void. The only penalty is that the court in rendering judgment will deduct three times the amount secured by the instrument above the lawful rate of interest. But the defendants are not even entitled to this deduction. They have not come into court and testified, as required by the statute. Comp. Statutes 491, sec. 3.

2. But the contract is not usurious. The stock was loaned, not sold. The railroad company could sell it or pledge it as collateral. By the terms of the contract they were to return it in

one year, with twelve per cent. upon its market price at the end of the year, for the rent of the stock. If the stock had advanced in value, the loss would have fallen on the road; and if it had fallen in the market, as it actually did from par to seventy-two cents on the dollar, the gain would have been that of the road. The twelve per cent. was to compensate the plaintiff for any depreciation there might be in the value of the stock. Suppose he could have sold his stock on the day he loaned it, at par, and in one year have replaced it at $72. Here would have been a clear gain of $28 per share to him; and it was in apprehension of this depreciation that the road agreed to pay him twelve per cent.

Suppose the plaintiff had sold the railroad company his farm, with an agreement that they would re-convey it to him in one year, with twelve per cent. on its value in money, for the rent or use of it. Would such a contract be considered usurious?

Simons loaned the road no money. It was personal property which was to be returned to him in a given time, with an agreed amount for the use, or rent of it.

FOWLER, J. The motion for a nonsuit rests upon four distinct grounds. The fourth, relating to the alleged usuriousness of the principal contract, does not render necessary any determination of the question, whether or not such a contract is to be deemed usurious, inasmuch as by our statute usury does not render a contract illegal and void, but only operates to reduce the amount of damages to be recovered for its non-fulfilment, where properly taken advantage of in a suit for its breach. Unless, therefore, it be shown, in the mode prescribed by the statute, that the amount of usury is so large that three times its amount is equal to or greater than the whole sum due upon the contract, by its terms, the existence of usury can never be a valid ground for nonsuit. Such is not the present case. Revised Statutes, chap. 190, secs. 2 and 3.

The third reason assigned for a nonsuit, that it did not appear that the president of the New-Hampshire Central Railroad was

authorized to make the contract which the defendants guarantied, cannot prevail, without reference to the authority of that officer in the premises ; since the defendants are estopped by their own conduct from raising the question of his authority.   It is apparent from the contract itself, at the bottom of which is the defendants' guaranty, of the same date, and evidently executed at the same time, that the defendants not only stood by and witnessed the delivery by the plaintiff, of his Northern Railroad stock to the New-Hampshire Central Railroad, but, by volunteering their own agreement for its prompt return, as stipulated, contributed to induce, and probably furnished the principal inducement to such delivery by the plaintiff.   To permit them now to evade the force and avoid the obligation of their own contract, on the ground that the Central Railroad was not authorized to borrow the stock, would be to permit them to take advantage of their own wrongful conduct, amounting under the circumstances to little less than actual gross fraud.   The rule of law is clear and indisputable, that where one, by his words or conduct, causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.   If, whatever a man's real meaning may be, he so conducts himself that a reasonable man would take his representation to be true, and believe it was meant that he should act upon it, and he did act upon it as true, the party making the representation would be equally precluded from contesting its truth, whether he knew it to be untrue or not, or whether he meant it should be acted upon as true or not.   *Pickard* v. *Sears*, 6 Ad. & Ellis, 475 ; *Freeman* v. *Cooke*, 2 Exch. Rep. 654 ; 2 Smith's Leading Cases 544, and numerous authorities ; *Mack* v. *Willard*, 13 N. H. 389 ; *Roe* v. *Jerome*, 18 Conn. 138 ; *Middletown Bank* v. *Jerome*, 18 Conn. 443 ; *Farnum* v. *Bryant*, 34 N. H. 9.

In the present case, one of the defendants was himself president of the Central Railroad, and as such executed the principal contract, while the others appear to have been his associates in

---
---

the board of directors of that corporation. They knew or ought to have known whether the railroad was authorized to make, and its president to execute it or not ; and however that may have been, having represented by their conduct, in guaranteeing the fulfilment of the contract, that it was duly authorized and valid, they cannot be permitted to deny it, after having induced the plaintiff to act upon their representation, by delivering over his Northern stock on the faith of it.

The second ground of the motion for a nonsuit, that it was not shown that any demand had been made upon the railroad, or any notice of the non-delivery of the stock in return, given to the defendants, is equally unfounded. For, regarding the defendants as simple guarantors only, it is well settled by the general current of authority that the obligation of a guarantor is that which the fair import of the language used imposes upon him ; if he · engages absolutely for the payment of money or the performance of any other act, he is not entitled to insist upon any condition. Notice of non-payment or non-performance by the principal, is not necessary to charge the absolute guarantor, although it may generally be advisable to give him notice, in order to rebut any presumption of laches in the party guarantied. The rule in relation to negotiable paper is thus stated by *Chitty* : " In general, if the note or bill be given as collateral security, and the party delivering it were no party to it, either by indorsing or transferring it by delivery when payable to bearer, but merely caused it to be drawn or indorsed, or has merely guarantied the payment, it has been considered that he is not, within the custom of merchants, an indorser or party to it, so as to be absolutely entitled to a strict regular notice, unless he can show, by express evidence, or by inference, that he has actually sustained loss or damage by the omission." Chitty on Bills, (11th Am. from 9th London Ed.) 441, 444.

Notice to the absolute guarantor is not a term or condition of the contract of guaranty upon a promissory note or bill of exchange ; he is no party to the instrument, and is not by the custom of merchants entitled to notice of the dishonor ; but if he can

show that, for want of regular notice, he has sustained actual damage, he will have a defence, at least *pro tanto*. *Warrington* v. *Furber*, 8 East 242; *Phillips* v. *Astling*, 2 Taunton 206; *Swingard* v. *Bowers*, 5 Maule & Selwyn 62; *Hollrow* v. *Wilkins*, 1 Barn. & Cress. 10; *Van Wort* v. *Wooley*, 3 Barn. & Cress. 439; *Camidge* v. *Allenby*, 6 Barn. & Cress. 373; *True* v. *Harding*, 3 Fairfield 193; *Reynolds* v. *Douglass*, 12 Peters 497; *Gibbs* v. *Cannon*, 9 Serg. & Rawle 198; *Erwin* v. *Lamborn*, 1 Harrington 125; *Prentice* v. *Danielson*, 5 Conn. 175; 2 Amer. Leading Cases 33–98; *Breed* v. *Hillhouse*, 7 Conn. 523; *Williams* v. *Granger*, 4 Day 444; *Read* v. *Cutts*, 7 Greenl. 186; *Babcock* v. *Bryant*, 12 Pick. 133, 416; 20 Johnson 365; 2 Comstock 225.

Where the absolute guarantor is not injured by the want of notice, he is liable, just the same as if duly notified, and the absence or want of notice does not imply such an injury to the guarantor as will discharge him from his liability. To have that effect it must be shown affirmatively that he has been injured by the omission. It is a matter of defence. The terms of the contract of guaranty are construed strictly, and the law does not supply any condition which is not incorporated into the agreement, or fairly implied from the language used. *Gibbs* v. *Cannon*, 9 Serg. & Rawle 198; *Rhett* v. *Poe*, 2 Howard U. S. 457; 4 Humph. 303; 9 Shepley 164; *Matthews* v. *Chiesman*, 12 S. & M. 595; *Bigelow* v. *Benton*, 14 Barber 123; *Wright* v. *Johnson*, 8 Wendell 512; *Hunt* v. *Smith*, 17 Wendell 179; *Dobbin* v. *Brandley*, 17 Wendell 422; *Walrath* v. *Thompson*, 6 Hill 540; 2 Comstock 185; Edwards on Bills and Notes 218–244; *Butler* v. *Wright*, 20 Johnson 365; *Tillman* v. *Wheeler*, 17 Johns. 326; *Upham* v. *Prince*, 12 Mass. 14; *Beebe* v. *Dudley*, 6 Foster 249, and authorities.

What has been said of the three other causes of nonsuit is also true of the first, that it has no validity. It is, that the contract of the defendants, being to pay the debt or fulfill the engagement of the railroad, is void within the statute of frauds, no consideration therefor being expressed therein. Admitting that,

under our statute, a promise or agreement to pay the debt of another should not only itself be in writing, but the consideration also, we think the defendants' guaranty is valid within the principle of numerous decisions, both in this country and England. There is nothing in the language of the statute, or in the construction put upon it in *Wain* v. *Warlters*, 5 East 10, to render it necessary that the consideration should be set forth in terms, and nothing more can be requisite, in any case, to avoid the operation of the statute, than that the necessary and constituent parts of the agreement should appear from written, and not from parol evidence. This is manifestly true where the consideration appears in any part of the writing containing the guaranty, and equally so where it can be gathered from any other instrument to which the guaranty refers, either expressly or by necessary implication.

It is very clearly apparent from an inspection of both what are called the principal and collateral contracts now under consideration, that both were made at the same time and for the same consideration, to wit: the loaning of his stock by the plaintiff to the Central Railroad, and also that the collateral contract was an essential ground of the credit given to the principal, or direct debtor. In such cases it is not necessary that there should exist or be expressed in writing any other consideration than that moving between the creditor and original debtor, for the consideration of one is manifestly that of the other. *Leonard* v. *Vredenburgh*, 8 Johns. 29, and authorities; *Bailey* v. *Freeman*, 11 Johnson 220; *Nelson* v. *Dubois*, 13 Johns. 175; *D' Wolf* v. *Rabaud*, 1 Peters 476; *Rogers* v. *Kneeland*, 10 Wend. 218; S. C., 13 Wend. 114; *Staats* v. *Howlett*, 4 Denio 559; *Bank* v. *Carter*, 3 Comstock 203.

So, too, it is not to be disguised that the undertaking of the defendants, though drawn partly in the form of a guaranty, is in substance an original promise, for a valuable consideration, expressed on the face of the instrument; and it has been repeatedly holden that a recovery may in such cases be had on the instrument of guaranty against the guarantor, as a maker of the origi-

nal contract. *Hunt* v. *Adams*, 5 Mass. 358 ; *White* v. *Howland*, 9 Mass. 314 ; *Hough* v. *Gray*, 19 Wend. 202 ; *Dean* v. *Hall*, 17 Wend. 214 ; *Lequeer* v. *Prorser*, 1 Hill 256 ; 4 Hill 420.

The defendants seem to have been original parties to the contract, as well as the Central Railroad, and the contract, in its language as well as in its legal construction, may well be regarded as a direct and absolute promise of the defendants, as well as of the railroad, that the stock loaned should be returned to the plaintiff at the end of one year. The legal effect of the whole contract is hardly different from what it would have been had it been written and signed, binding the railroad as principal and the defendants as sureties, for the return of the stock at the expiration of the year.

But, regarding the contract of the defendants as one of simple guaranty alone, and therefore requiring the consideration as well as the promise to be in writing, it comes within the authority of numerous adjudications, to the effect that it is sufficient if the consideration can be fairly implied from the terms of the guaranty, or gathered from any other instrument, expressly or impliedly so referred to in it, as to fairly become a part thereof. The defendants' contract is written directly underneath that of the principal debtor, and expressly and in terms refers to it. They guaranty the fulfillment of the principal agreement in so many words, referring expressly to it, and promise the plaintiff that his stock, that is, the stock by the principal agreement acknowledged to have been loaned to the principal debtor, shall be returned at the time specified in that agreement, agreeably to the stipulations of that agreement. Now, it seems to us, here is such an intimate connexion in sense between the two agreements, apparent on their face, that there can be no difficulty in collecting, without the aid of parol evidence, from the principal agreement, the consideration of the collateral one. The reference in the latter to the terms of the former is equivalent to an admission ; at all events, the fair and necessary implication is, that the consideration of the defendants' promise was the receipt by the railroad of the borrowed stock. The only legitimate inference

from the expressions used in the contract of guaranty itself is, that such was the consideration of the defendants' engagement. *Stadt* v. *Lill*, 9 East 348 ; *Rogers* v. *Kneeland*, 10 Wend. 218, 250 ; *Jackson* v. *Lowe*, 1 Bing. 9 ; see also the authorities cited before, under the first clause of this topic, and notes to *Birkmyr* v. *Daniell*, 1 Smith's Leading Cases 134, and those to *Wain* v. *Walters*, 2 Smith's Leading Cases 147. See also notes of Williams to *Forth* v. *Stanton*, 1 Saunders 210.

As all the grounds of the motion for nonsuit were untenable, it was properly overruled, and there must be·

> *Judgment on the verdict.*