# MERRIMACK,

## HALE *v.* THE UNION MUTUAL FIRE INSURANCE COMPANY.

According to the by-laws of a mutual fire insurance company, if the insured neglected, for ten days after demand, to pay an assessment, the risk on his policy was suspended till the assessment was paid. The insured, fourteen months after the risk on his policy had been thus suspended, sold his property and assigned his policy to the purchaser; and the company, without giving notice to the assignee that the risk was suspended, or the assessment unpaid, assented to the assignment.—*Held*, that the company must be considered to have waived their right to insist on the objection.

As a general rule, corporations have power to waive their rights, and are bound by estoppels, *in pais*, like natural persons.

ASSUMPSIT on a policy of insurance against fire, issued to the plaintiff by the defendant, June 15, 1850. On a sale of the property insured to one Davis, the policy was assigned to him by the plaintiff, and Davis, to secure the purchase money, mortgaged back the premises, and reässigned the policy to the plaintiff. The assignment and reässignment were made with the assent of the defendant, on the 23d of May, 1852.

The twelfth article of the by-laws of the company is as follows: "If the insured shall neglect for the space of ten days, when personally called on, to pay any premium or assessment upon either class of property, the risk of the company on the policy shall be suspended till the same is paid. But, if the insured shall refuse to pay any assessment, the directors may terminate the same by giving notice thereof in writing, either

personally or by mail, to the insured, provided such termination shall not affect the validity of the policy or note, so far as respects past dues."

The sixteenth article of the by-laws provided as follows: " When the title of any property insured shall be changed by sale, mortgage, or otherwise, the policy shall thereupon be void; but if the grantee or alienee have the policy assigned to him, he may, upon application to the directors, if they consent within thirty days after such alienation, on giving proper security, have the same ratified and confirmed in force for his benefit, with all the rights, and subject to all the liabilities to which the original party insured was entitled and subjected."

The first assessment was made on the policy January 1, 1851, and on the 13th of March, 1851, committed for collection to an agent of the defendants, at Lebanon, Maine. On the 28th day of June, 1851, payment of the assessment having been demanded of the plaintiff on the 13th of March, 1851, and refused, the agent returned the assessment as uncollectable. On the 26th of December, 1851, the assessment was recommitted to the same agent for collection.

A second assessment was made January 1, 1852, and on the 3d of March, 1852, was committed for collection to the same agent.

On the 27th of July, 1852, the agent again returned the first assessment as uncollectable, and the directors thereupon on that day cancelled and discharged the policy, and that assessment has never since been paid.

Between the 27th day of July, 1852, and the 5th of January, 1853, the defendants' agent collected of the plaintiff the second assessment, and on the last named day paid the amount to the defendants. Notices of both assessments were given by advertisement, and by notice through the post office, as required by the charter and by-laws, and by the vote of the directors immediately after they were made. Payment of the first assessment was demanded of the plaintiff personally, and refused, contrary to the provisions of the by-laws.

The premises were destroyed by fire on the 28th of December, 1852.

It was agreed that judgment might be rendered according as the opinion of the court might be on the foregoing case; but that either party so electing might try any material fact or facts by the jury.

*Bartlett*, for the plaintiff.

*George & Foster*, and *Fowler*, for the defendants.

PERLEY, C. J. On this case the defendants have set up two grounds of defence: first, that the policy was discharged and vacated by the directors on the 27th of July, 1852, before the loss happened; second, that the insurance was suspended from and after the 24th of March, 1851, by the neglect of the plaintiff to pay the assessment of January, 1851, which was demanded March 13, 1851, and continued to be suspended down to the time of the loss. It is understood that the defendants now waive the first of these objections, and rely on the second.

The plaintiff contends that the by-law relied on by the defendants is void, because it is in conflict with the act of incorporation, and with the contract of the defendants; and also maintains that the true construction of the by-law requires of the company some act to suspend the risk; whereas the defendants insist that the risk, under the by-law, was suspended by the mere lapse of ten days after the neglect of the plaintiff to pay the assessment on demand.

The plaintiff also takes the ground, that, on the facts appearing in this case, the defendants must be held to have waived their right to insist on this defence as against Davis, the mortgagor and assignee of the policy.

Taking the by-law to be valid, and giving to it the construction contended for by the defendants, how does the case stand on the other point?

On the 23d of May, 1852, Hale, this plaintiff, sold the prem-

ises to Davis, and assigned the policy to him, and to secure the purchase money Davis mortgaged back the premises, and with the mortgage reässigned the policy for additional security. Davis was interested in the policy after the assignment to the plaintiff, and is interested in the loss, because, if the plaintiff recover, the money will be applied to extinguish or reduce his debt to the plaintiff, and this interest of Davis will be protected in a suit at law. *Albee* v. *Little*, 5 N. H. 277.

What state of facts existed on the 23d of May, 1852, when Davis purchased the premises and took his assignment of the policy? An assessment had been made on the first of January, 1851, which had been demanded on the 13th of March, 1851, and payment refused; and by virtue of the by-law, on the construction given to it by the defendants, the risk had become suspended on the 23d of March, 1851, and remained suspended at the time of the assignment. This assessment had been returned on the 28th of June, 1851, as uncollectable, and on the 26th of December, 1851, had been recommitted to the same agent for collection, and was then in his hands uncollected; and since the recommitment the directors had received no information from the agent on the subject. In the meantime a second assessment had been made on the policy, and committed for collection to the same agent on the 3d of March, 1852.

It was obviously material for Davis, when he was about to take an assignment of this policy, to be informed of this state of facts; for the insurance on the policy was then in fact suspended, and would remain so until the old assessment was paid, and the whole object of the assignment would be defeated unless this objection were removed.

It is argued for the defendants that the directors did not then know that the assessment remained unpaid, as it was then in the hands of their agent, from whom they had received no advices on the subject, and that they could not be expected to communicate a fact of which they were not themselves informed. They knew, however, that the assessment of January 1, 1851, had been demanded and payment refused, and that the risk had

remained suspended from the 23d of March, 1851, to the 26th of December, 1851 ; that the assessment had been returned by the agent as *uncollectable ;* had been committed again to the same agent, and no information received from the agent, from which it would be inferred that the assessment had been paid and the insurance thereby revived. Had Davis received from the directors the knowledge on the subject which they possessed, he might have well declined to take an assignment of a policy which, so far as the information went, was then invalid, and had been so for more than a year; or, if he had decided to take an assignment, with this information he would have been in a situation to see that the assessment was seasonably paid, and the insurance restored. It was, therefore, material and essential that Davis should have the knowledge which the directors possessed, if they intended to rely on the objection that the assessment remained unpaid ; for without that knowledge he would be trusting to a security that was tainted with a defect which would defeat the whole object of the arrangement he was making to obtain an assignment of the policy.

There is no evidence in the case from which it could be inferred that Davis had any actual knowledge on the subject. If it was his own fault that he remained in ignorance of a fact which, if allowed to be insisted on, would defeat the whole object of the assignment, he cannot complain. But if his ignorance was owing to the neglect of the defendants to communicate information which they were bound to disclose, they cannot now set up the fact suppressed, to defeat this action.

As a general rule, corporations have power to waive their legal rights, and are bound by implication and estoppels, *in pais*, like natural persons. They can claim no exemption from the operation of those rules and maxims which are established to enforce good faith and fair dealing among individuals. Angell and Ames on Corporations 216 ; *Heath* v. *Franklin Ins. Co.*, 1 Cush. 257 ; *Clark* v. *New-England Ins. Co.*, 6 Cush. 342. And there is nothing in this case to take it out of the general rule. The directors had power to waive the right of the corpo-

ration to insist on the suspension of the risk for non-payment of the assessment.

The by-law was annexed to the policy, and Davis, when he took the assignment, must be supposed to have known that if an assessment had been demanded and remained unpaid, the risk would be suspended until it was paid. Was he, as a man of common prudence, bound to suspect that the defect set up in defence to this action existed in the insurance, and to inquire until he ascertained how the fact was?

It was then a year and near five months since the first assessment had been made; the risk had been suspended, for neglect to pay, a year and two months; the directors had in the mean time made another assessment on the policy; he applied to the directors for their assent to the assignment, which they gave, and thereby, in the language of the by-law, " ratified and confirmed it to him." And yet they said nothing to him of any defect in the insurance. We think he had a right to suppose that he was taking a valid and available insurance, and not one that was tainted with a defect, which had already made it inoperative for more than a year. If the directors meant to insist on this objection, they should have spoken then; and not having spoken then, but having allowed Davis to take the assignment without notice of the objection, they must be understood to have waived it, and cannot now be permitted to set it up to defeat an insurance, to which Davis had innocently trusted till the loss happened.

In *Albee* v. *Little,* 5 N. H. 277, the note in suit was not negotiable, but had been assigned, and the action was prosecuted for the benefit of the assignee. The defendant offered to prove that the note was discharged, by payment made to a third person, pursuant to an agreement in writing between the parties to the note, made at the date of the note; but it appearing that the defendant was informed of the assignment, and gave no notice of the agreement, it was decided that he could not set up that defence, but must be held to have waived his right to set off the money paid under the agreement in answer to the action. The

court say : " The answer to the set-off is, that although the defendant had notice of the assignment of the note to Bunce nine months before it became due, he gave no notice of the agreement between him and the plaintiff to Bunce, but kept that matter concealed. And we are of opinion that such a course must, under the circumstances, operate as a waiver of the right to take advantage of the set-off, and as an acquiescence in the assignment of the note to Bunce." *Tyler* v. *Yates,* 3 Barb. Sup. Co. 222, is to the same point.

It is contended that, as in the terms of the by-law, the assignee takes the policy, with the rights of the assignor, and no others. Davis would stand in the place of Hale, who knew all the facts, and that he would, under the by-law, have no higher rights than Hale.

But the by-law in this respect does no more than state the general rule of law, applicable to assignments of choses in action. Every defence may be made to an action brought in the name of the assignor, for the benefit of the assignee, that would be made if the equitable interest remained in the original party. This is the legal right of the defendant ; but this legal right may be waived by the conduct of a defendant, as in the case of *Albee* v. *Little,* so that he will not be allowed to set up a defence that would have been valid against the assignor. Indeed, these cases of waiver by implication and estoppels, *in pais,* go generally upon the ground that the party has so conducted himself that he cannot be permitted to set up the right he had under his contract or his title. On this case the

*Plaintiff is entitled to judgment.*