# BELKNAP,

## DECEMBER TERM, A. D. 1860.

---

### ODLIN v. GOVE.

To constitute an equitable estoppel by standing by, without objection, and witnessing a sale of land, or the erection of valuable buildings thereon, it is indispensable that the party to be concluded should have been fully apprised of his title, and that the other party, at the same time being ignorant of such adverse title, should have been misled by such acquiescence, and induced thereby to change his position.

For, if he was not ignorant of such adverse title, or, being put upon inquiry, the means of knowledge being within his reach, if he failed to use reasonable diligence to ascertain the truth, he has no cause to complain.

Whether he has used reasonable diligence, and whether the person against whom the estoppel is set up has given reasonable notice of his claim, are questions for the jury.

When, on a writ of entry, there is a disclaimer as to part, and the general issue as to the residue, and the jury return a verdict for the whole in favor of the demandant, he may have judgment for the parcel intended to be found, if the materials for a sufficient description exist, upon entering a remittitur as to the residue.

THIS is a writ of entry brought by Joseph E. Odlin against Richard Gove, and the question is one of boundaries between adjoining owners. The land is in the village of Laconia, and each party has a brick building on his land, with but a narrow space between them. The tract demanded is a triangular piece, fifteen inches in front upon the street, and extending back seventy-two feet to a point. The defendant, as to so much of the land demanded as is located under the north wall of his building, being fourteen inches in front and extending back twenty-seven feet,

pleads nul disseizin, and disclaims the residue. On trial, it appeared that one Smith formerly owned both parcels of land in one entire tract, and that he was bounded on the north by land of Stephen Gale, and that, in conveying to the plaintiff a part of the entire tract, twenty-one feet on the street, he bounded it on the north by said Gale's land; that before this conveyance to the plaintiff, said Smith and Gale examined and agreed upon the line between them, but precisely where this was the parties at the trial did not agree. Soon after the conveyance, the plaintiff, Odlin, and Gale made an exchange to bring the line nearer a right angle with the street, and conveyances were made by which, upon actual measurement, Odlin received a strip one foot wide on the street for two feet in the rear; and iron hubs were put down at the corners, which still remained.

To the reception of the testimony as to such measurement and placing the hubs, the defendant excepted, but it was admitted.

After this, Smith sold the residue of his tract, bounding it on the north by the plaintiff's land, and, after passing through several hands, this residue was conveyed to the defendant.

At the trial, Smith was examined as a witness by the plaintiff, and, after stating what was said and done at the time of the arrangement between him and Gale about the line, he was requested to state whether or not, at that time, any agreement was made between himself and said Gale in relation to any line, and if so, what that agreement was, and to what line it related; and this question was allowed to be put, against the defendant's exception that the jury were to judge from what was said whether an agreement was made or not, and that to allow the witness to answer the question, after stating what was said, would be to express merely an opinion as to the effect of the language used.

Odlin *v.* Gove.

The defendant offered evidence tending to show that the plaintiff had said that his land extended no further south than the eaves of his building, while the measurement from the northeast corner, as he claimed it, made it extend twelve or fourteen inches further south; and upon cross-examination the plaintiff said he presumed he had made such a statement repeatedly. On resuming the direct examination, the plaintiff was allowed, against the defendant's exception, to state, by way of explanation, that his remark referred to the bargain he had made with Smith to exchange land on his (plaintiff's) south line, but which was not in fact carried out.

The plaintiff testified that in the summer of 1857 he was in Wisconsin; that he went away in April, and returned some where from the middle to the last of August; that when he left, nothing had been done upon Gove's building, but that when he returned the cellar wall was in, the first floor laid, and some timbers in. Some three or four days or a week after he returned, he first noticed that Gove's block was on his land; that he was not well when he first came home for a while, and was not on the street much; that when he first noticed that Gove was on his land, he had begun to put up some of the frame-work; that he did not see Gove immediately after this, but did see him a number of times before they talked upon that subject; that he then told Gove that he had got his building on his (Odlin's) land; that he could not tell how long this was after he got home,—that it might be two or three weeks perhaps; that he did not consent that Gove should put his building upon his land; and that he did not notify Gove personally, immediately on becoming satisfied that he was on his land.

On cross-examination he testified that none of the brick work had been done upon the building when he first noticed that the defendant was on his land; that after the brick work was commenced, he passed it occasionally; that

he resided in the lower part of the village; that he passed it some days, others not; that when he first notified Gove that he was on his land, he was putting up the brick work, and had got up perhaps one story; that he saw him there at his building and spoke to him about it, and told him he had got upon his (Odlin's) land; that Gove said he guessed not; that after this Gove applied to him for leave to put his staging upon the roof of the plaintiff's block; that the plaintiff told him he might do so; that he did not recollect the height of Gove's brick walls at that time, nor did he recollect as there was then any thing said about Gove's being on his land, but that he did talk with Gove a number of times after this upon that subject.

The defendant testified that he began to lay his brick walls September 1, 1857; that he saw the plaintiff, after his return from the West, every day, or nearly every day, upon the street, as he passed the building where the work was going on, and frequently spoke with him, and that Odlin did not notify him that he was erecting his building upon the plaintiff's land until he had got the brick walls entirely up.

There was evidence tending to show the number of hands employed upon the building, and the progress made from time to time, and when it was completed. The defendant requested the court to instruct the jury that "upon the plaintiff's own testimony he is estopped from maintaining this action."

He also requested the court to instruct the jury that "if they should find from the evidence that the plaintiff, knowing that the building was in process of erection, did not notify the defendant that he was upon his land till after the brick work of the building was completed, it would amount to an estoppel in law, and the action could not be maintained." This the court declined to do, but did instruct them that it was the duty of Odlin, when he returned and found Gove erecting an expensive and valuable build-

ing partly upon his land, to notify Gove of that fact within a reasonable time; and if Gove was thus building his house on the plaintiff's land, without fault on his own part, and Odlin stood by and saw him thus erect it, knowing it to be upon his land, and suffered it to be completed without thus notifying him, he would be estopped from claiming the land; that it was Odlin's duty to give Gove such notice within a reasonable time after he discovered the building to be upon his land; that whether the notice given in this case was within a reasonable time after such discovery, was a question of fact for the jury to settle, upon all the evidence before them; that if the jury should find that Odlin gave Gove such reasonable notice, the estoppel would not operate against the plaintiff, but if he did not do so, and Gove was without fault, then the plaintiff would be estopped from claiming the land.

The defendant's evidence tended to show that before beginning to build, Gove consulted the record in the registry of deeds, and found a record of the deed Smith to Odlin, and that he inquired of said Stephen Gale, and of one Benjamin P. Gale, as to where the line was between Stephen Gale and Odlin, and received such answers as led him to believe that the more northerly of the two lines— the one now claimed by the defendant—was the true one; while the plaintiff's evidence tended to show that when Gove inquired of said Benjamin P. Gale in regard to the line, his attention was called to the fact that the plaintiff and Stephen Gale had exchanged land, and that he then admitted that he had knowledge of those deeds being on record, and that something was said to Gove about there having been iron hubs put down by Charles S. Gale and Odlin, at the corners between Odlin and Stephen Gale as made by the exchange of land, and that he was told by said Benjamin that if he would go and dig he would probably find those iron hubs. Upon this point the court in-instructed the jury that if Gove erected his house, or any

part of it, on Odlin's land, knowingly and intentionally, he would be in fault; and being put upon inquiry, as the evidence on both sides tended to show that he was, in regard to the true location of the line, it was his duty to make such inquiries and examination, and use such precautions as a man of ordinary care and prudence would make and use under similar circumstances, and if, doing this, he failed to ascertain the true line, and in consequence built some part of his house upon Odlin's land, supposing it to be his own, he would not be in fault; but if he failed to use and exercise such a degree of care and prudence, and in consequence of such failure did not ascertain the true line, when the means of doing so were reasonably within his reach, and thus heedlessly and carelessly built his house, or a part of it, on Odlin's land, he would be in fault. To these instructions and refusals to instruct, the defendant excepted.

The plaintiff's evidence tended to show that he owned fourteen inches of land in width, under the northeast corner of the defendant's block; and the defendant's evidence tended to show that the plaintiff owned none there; and no question was raised during the trial, and no suggestion made in the arguments, that if the plaintiff could recover any thing, he was not entitled to recover that amount in width at that point.

The jury having separated by consent of the parties, after agreeing upon a verdict, came into court the next morning with a general verdict for the plaintiff, without specifying the quantity of land the plaintiff was entitled to recover; whereupon the counsel for the plaintiff drew up a verdict, which was signed by the foreman of the jury, as follows: "The jury find that the defendant did disseize the plaintiff in manner and form, as the plaintiff has declared against the said defendant," which verdict was placed on file with the clerk; and the defendant moved to set aside the verdict for supposed error in the aforesaid

ruling and instructions of the court; and upon the ground
that the verdict, as signed by the foreman of the jury, gave
to the plaintiff all the land he claimed in his writ, as well
the portion disclaimed by the defendant, as the other; and
also upon the ground that the verdict, as returned by the
jury, and that signed by the foreman, were both fatally de-
fective in not specifying the quantity of land to be recov-
ered.

*Whipple, Hibbard,* and *I. A. Eastman,* for the defendant,
to the point that Smith, having stated what was said and
done, should not be allowed to state whether an agreement
was made or not, cited *Beard* v. *Kirk,* 11 N. H. 597, and
*Patterson* v. *Colebrook,* 29 N. H. 94, 101; to the point that
the plaintiff, by his own admissions, was estopped to claim
the land in dispute, they cited *Davis* v. *Handy,* 37 N. H.
73, and *Hatch* v. *Kimball,* 16 Me. 146; to the point that
the jury should have been instructed that if the plaintiff
knew that the building was being erected, and did not
notify the defendant until the brick work was completed,
it would be in law an estoppel, they cited *Wells* v. *Pierce,*
27 N. H. 503; *Davis* v. *Handy,* 37 N. H. 73; *Corbett* v.
*Norcross,* 35 N. H. 99; *Wendell* v. *Van Rensselaer,* 1 Johns.
Ch. 354; and *Rangeley* v. *Spring,* 21 Me. 130; and to the
point that the finding of the jury is defective, they cited
*Parker* v. *Brown,* 15 N. H. 176; *Patterson* v. *United States,*
2 Wheat. 221; and *Coffin* v. *Jones,* 11 Pick. 45.

*Stevens & Vaughan, Hutchinson* and *Avery,* for the plaintiff,
cited, to the point of allowing the witness Smith to state
that there was an agreement, *Eaton* v. *Rice,* 8 N. H. 380;
*Maxwell* v. *Warner,* 11 N. H. 568; *Hoit* v. *Moulton,* 21 N. H.
589; and *Furbush* v. *Goodwin,* 25 N. H. 445; to the point
that the plaintiff was allowed to explain, 2 Phill. Ev. 433,
and Gr. Ev. 467; to the matter of the estoppel, *Leicester*
v. *Rehoboth,* 4 Mass. 181; *Parker* v. *Barker,* 2 Met. 423;

*Pecker* v. *Hoit,* 15 N. H. 143; *Gale* v. *Tappan,* 12 N. H. 147; *Wendell* v. *Moulton,* 26 N. H. 61; *Pray* v. *Burbank,* 11 N. H. 290; 3 Hill 221; 1 Fonbl. Eq., B 1, secs. 3, 4; 2 Sugd. on Vend. 299; 1 Story Eq., sec. 386; *Brewer* v. *Boston & Worcester R. R.,* 5 Met. 484; and 3 Hill 269; and as to the verdict, *Porter* v. *Rummery,* 10 Mass. 66; 2 Burr. 698; *Hawkes* v. *Crofton,* Hob. 54; 1 Tidd Pr. 661; 2 N. H. 323; 12 N. H. 58; 23 N. H. 519; 24 N. H. 271; 1 Saund. 285, note 6; and 2 Salk. 658.

BELLOWS, J. The testimony of the plaintiff, whether an agreement was made between him and Stephen Gale, was not properly a matter of opinion, but of fact, to which he might testify. The opinion of the witness, as to the effect of what was said and done, would be open to the objection taken by the defendant's counsel; but whether an agreement was made, whether there was the consent of the two minds, is quite a different thing. Had he stated, in the first instance, that the parties made a line, set up boundaries, and agreed to it, there could have been no valid objection to it. In *Eaton* v. *Rice,* 8 N. H. 380, it was held that when the witness could not state the language used, he might be allowed to state that he understood the parties to agree to a line,—showing clearly that it is not to be regarded as the mere expression of an opinion. In the case before us, although the witness had previously stated what was said and done, it was properly within the discretion of the court to allow him to state in another form that they agreed to the line. Ordinarily, however, such a repetition would not be allowed, but in a case where the language was imperfectly remembered by the witness, it would come within the range of a sound judicial discretion, over which this court would exercise no control. 1 Gr. Ev., sec. 431; *Furbush* v. *Goodwin,* 25 N. H. 441.

The admission of the plaintiff's testimony in respect to the iron hubs, as tending to show where the line was, is

not open to the objections urged by the defendant's counsel. The grounds of its admission were stated, and we can see no reason for supposing that the jury were misled by it.

The plaintiff was properly allowed to explain his statements that his land extended no further south than the dropping of the eaves of his building. These statements had not the character of a contract; and there is nothing that would estop the plaintiff from showing to what he referred, and in what sense he used the words.

The court, we think, was right in declining to instruct the jury that the plaintiff, upon his own testimony, was estopped from maintaining his action. To constitute an equitable estoppel by standing by and seeing valuable improvements made upon the land by another, without objection, it must appear that the owner was fully aware of his own title, or, in other words, that he wilfully concealed it, and that the occupant, being ignorant of such title, was misled by such silent acquiescence, and induced thereby to change his position. The general doctrine is well stated by Lord *Denman*, in *Pickard* v. *Sears*, 6 A. & E. 460, in these words: "When one, by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, or to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time." The same language is used by Baron *Parke*, in *Freeman* v. *Cooke*, 2 W. H. & G. 653, and the definition is adopted by *Perley*, C. J., in *Davis* v. *Handy*, 37 N. H. 75, and is fully indorsed by *Story* in his Commentaries on Equity (page 386), where he says, "To justify the application of this cogent moral principle, it is indispensable that the party so standing by and concealing his rights, should be fully apprised of them, and should, by his conduct or gross negligence, encourage or influence the purchase; for, if he is wholly ignorant of his rights, or the purchaser knows them, or if his acts, or silence, or neg-

ligence do not mislead, or in any way affect the transaction, there can be no just inference of actual or constructive fraud on his part." In accordance with these views are *Dunn* v. *Spurein*, 7 Ves. 236 ; *Rangeley* v. *Spring*, 25 Me. 130 ; *Morton, Admr.*, v. *Hodgdon*, 32 Me. 127 ; *Gray* v. *Bartlett*, 20 Pick. 193 ; 2 Smith L. C. (5th Am. Ed.) 619, 642–646, 660–663 ; 4 Kent Com. (9th Ed.) 261.

If, then, the title of the plaintiff was equally open and apparent to both parties, and the defendant acted upon the judgment he had formed of the conflicting claims, and was not misled by the silence of the plaintiff, there could be no ground for contending that the plaintiff's conduct was in the nature of an admission, upon which the defendant had acted. Whether the defendant was so misled was a question for the jury ; and we think there was evidence upon which they might have found against the defendant on that point,—such as the fact that he claimed to the last a title to the land, independent of the estoppel ; that he had entered upon the erection of his building in the plaintiff's absence, and did not desist when informed of the plaintiff's claim ; together with the evidence tending to show that before commencing his work he was informed of the exchange between the plaintiff and Stephen Gale, the existence of the hubs, as marking the boundaries of the adjoining tract, and the probability that they might be found, and that, in fact, he was put upon inquiry as to the plaintiff's title. Had the jury found that the defendant was not misled, but acted upon the judgment previously formed as to the boundaries, we see no reason why such finding should have been disturbed. For the reasons already assigned, we are of the opinion that there was no error in refusing to instruct the jury that unless notice was given before the brick work was finished, the plaintiff would be estopped.

The question whether notice was seasonably given to the defendant, was properly left to the jury. Involving, as

Odlin *v.* Gove.

it does, an inquiry into the diligence, good faith, and fair dealing of the plaintiff, and whether there was such gross negligence on his part as to afford a just inference of fraud, it is quite obvious that no rules fixing the time can be laid down to suit the great variety of circumstances likely to exist. In deciding such a question, an inquiry must be had as to the knowledge possessed by the owner, of his own title, and at what time he had obtained so much as to require him to act—when he was made fully aware of the encroachment of the other party—the nature and progress of the erection—the knowledge already possessed by the occupant—and the condition of the owner in respect to the convenience of giving notice. For the determination of these questions the jury is the appropriate tribunal, as in other cases involving inquiries as to good faith, reasonable time, care, due diligence, probable cause, fraud, and the like. It is true that there are cases where the courts have laid hold of some prominent and decisive incident, and have determined by positive rules what shall be deemed reasonable time,—as in the case of the dishonor of a note or bill of exchange, where the parties live in the same town, or notice may be given through the post-office. But no such controlling incidents exist in cases of this sort, nor are we aware of any attempt to establish any rule defining what shall be a reasonable time in such cases. In the case before us, the work was already begun before the plaintiff returned; the land in controversy was but a few inches in width, and might or might not require some time to enable the plaintiff to satisfy his own mind as to the exact line; and there was some evidence tending to show that the plaintiff was not well for a time when he first came home, and also that the notice was given within two or three weeks after his return. And this illustrates the difficulty of laying down any rule as to the time of giving notice, except that it shall be done in a reasonable time under all the circumstances.

The doctrine of equitable estoppel is derived from courts of equity, and is based upon a high moral principle which denounces as a fraud the denial of a state of things which a party had before wilfully affirmed, with a view to induce another to change his position, and in consequence of which he did so change it. But as the application of the doctrine is highly penal in its character, it is indispensable that the fraudulent representation or concealment should be clearly established, and that actual bad faith, or that gross negligence which implies it, should be clearly shown; otherwise there would be great danger that estoppels of this character would justly be regarded as "odious." In *Moore* v. *Morgan*, Cowp. 478, the question of negligence and good faith, in a person employed to obtain an insurance upon property, was submitted to a jury. So whether, in a sale of a ship at sea, possession was seasonably taken on her arrival. *Joy* v. *Sears*, 9 Pick. 4. So whether the abandonment of a vessel to the underwriters was made in a reasonable time. *Reynolds* v. *Ocean Insurance Company*, 20 Pick. 19. So whether a traveller was exercising ordinary care and prudence. *Carleton* v. *Bath*, 22 N. H. 559. In 3 Stark. Ev. 423, it is laid down that "reasonable time is always a question of fact, in the absence of any rule or principle of law applicable to the circumstances." See also the same work, pages 406–418, and note on page 414; 1 Gr. Ev., sec. 490, and full note, and authorities collected; *Pray* v. *Burbank*, 11 N. H. 290; *Wendell* v. *Moulton*, 26 N. H. 61. The instructions to the jury, taken together, were, that if Gove was erecting his building on the plaintiff's land, without fault on his part, and the plaintiff stood by without objection, he would be estopped. And what would be fault on his part is stated in another part of the charge, viz., a failure, being put upon inquiry, to make such inquiries and examinations, and use such precautions, as a man of ordinary care and prudence would make and use under similar circumstances, by reason of which failure

Odlin *v.* Gove.

he did not ascertain the true line, when the means of doing so were reasonably within his reach. This raises the question whether, under the circumstances, and with the information obtained, and reasonably open to the defendant, including that which resulted from the silence of the plaintiff, he used reasonable diligence to ascertain the boundaries. If his vigilance was properly lessened by the conduct of the plaintiff, that was to be considered in determining whether he was or was not negligent. But if, under all the circumstances, including the plaintiff's silence, he unreasonably failed to use means of ascertaining the boundaries which were within his reach, he has no cause to complain; because, in cases of this sort, he is to be charged with such knowledge as reasonable diligence would have given him. In accordance with these views, it has been repeatedly held that a first mortgagee would not be postponed to the second by reason of his silence at the execution of the second mortgage, when the first had been duly recorded. *Carter* v. *Champion*, 8 Cow. 558; *Bigelow* v. *Topliff*, 25 Vt. 273; *Brinckerhoff* v. *Lansing*, 4 Johns. Ch. 65; *Clabaugh* v. *Byerly*, 7 Gill 354.

This point has been argued by the defendant's counsel with much force and ingenuity, but we are unable to assent to his conclusions, or give countenance to the idea that although the defendant was put upon inquiry, and the means of knowledge were at his command, he might still forbear to make investigations, but go on with his erections, taking the risk that the plaintiff might or might not interfere. This we could not regard as good faith on the part of the defendant, nor can it be deemed that, under such circumstances, he was misled by the silence of the plaintiff. This would be well illustrated by a case that might arise on the entire removal or destruction of the erections in question, subsequent to this trial, as the fact is now suggested to be. Should the defendant undertake to rebuild upon the same ground, could it be justly said

that he was misled by the silence of the plaintiff during such subsequent erection; and especially that it must be so taken as matter of law? And yet it might be said that the defendant did not know that the land was not his, and that would perhaps be true; but the jury might, and probably would find that he was not misled by the plaintiff's silence, but acted upon his own judgment as to his title.

The verdict in this case is for all the land described in the plaintiff's writ, when the defendant has disclaimed a part, and the issue tried is only as to the residue. It is clearly a mistake, but not such as to affect the judgment,— the part for which judgment should be rendered being clearly shown in the issue, and it being manifest that the jury have found the issue for the plaintiff. That they have found something more than was submitted to them, or than was proved, will not necessarily vitiate the verdict. It is clearly a case where the finding of the issue may be concluded out of the verdict, and that, as it is well settled, is sufficient, although the verdict is informal. *Pettes* v. *Bingham*, 10 N. H. 514; *Allen* v. *Aldrich*, 29 N. H. 75; *Hodges* v. *Raymond*, 9 Mass. 316; *Commonwealth* v. *Fishblatt*, 4 Met. 354; *Hawkes* v. *Crofton*, 2 Burr. 698; *Porter* v. *Rummery*, 10 Mass. 64; and so is *Parker* v. *Brown*, 15 N. H. 176, which fully recognizes the power to amend the verdict, as in this case; but the court decline to apply it there, for the reason that there was no description of the part to which the verdict should have been confined. So, if the jury find the issue, and something more, the latter may be rejected as surplusage. *Patterson* v. *United States*, 2 Wheat. 221. So, if a verdict is too large, the excess may be remitted, if it can be ascertained by computation. *Sanborn* v. *Emerson*, 12 N. H. 58; *Pierce* v. *Wood*, 23 N. H. 519; *Willard* v. *Stevens*, 24 N. H. 271. So where betterments were erroneously awarded, it was held that they might be remitted. *Wendell* v. *Moulton*, 26 N. H. 41.

The result is, that on remitting, in the judgment in this

case, the part disclaimed, and all of the residue but the fourteen inches shown in the evidence, there must be

*Judgment on the verdict.*