MARCH 13, 1875. }        GILBERT *v.* MANCHESTER.

Where the evidence tended to show that the city of Manchester had made a contract with the Amoskeag Manufacturing Company, a corporation, by which said corporation were bound to keep a certain street in good repair and permit the public to use it, and that the city, during a continuous period of nearly thirty years, had held out said street as suitable for the accommodation of the public, and that the plaintiff, relying upon such holding out, had used the street as a highway and sustained damage by reason of its defective and insufficient condition—*Held*, that the city were estopped to deny that said street was a highway, for defects and insufficiencies in which they were liable, as in the case of other highways, under the statute (ch. 69, Gen. Stats.).

CASE for defect in highway. The alleged defect was in Canal street (which runs north and south), between the carriage path and the east sidewalk, at a point nearly in a line with the south side of Middle street, which makes a junction with the east side of Canal street at a right angle. The question whether Canal street is a highway seemed so serious that the court restricted the trial to that question, for the purpose of first settling the law involved in it. Canal street was never laid out by public authority; and the question is, whether it is a highway by prescription. It had been used as a road by everybody that had occasion to use it, for more than twenty years before the date of the alleged defect,—and used during that time as much or more than any other street in Manchester except Elm street. The plaintiff claimed that the use was adverse; the defendants, that it was permissive. The street was laid out and built by the Amoskeag Manufacturing Company on their own land, and has been repaired by the company and not by the town. By deed, dated January 29, 1841, the company conveyed to the town of Manchester nineteen and seven tenths acres of land for a cemetery, to have and to hold for the term of two years, with a proviso that if the town should within the two years cause certain roads to be duly and legally discontinued, if they or either of them were public highways, the town should thenceforth hold the premises in fee-simple forever for a cemetery. By a deed of the same date the company conveyed to the town ten thousand feet of land on Elm street for a town-house lot, with a similar proviso. By a deed of the same date, from the company to the town, the company "granted, covenanted, and agreed" "to and with said town," that in case the town should cause the roads described in the deeds to be discontinued within two years, the town should "thenceforth have, and the company grant to said town from that time forward, for all the inhabitants of said town, and for all other persons having occasion to pass the same, full right to pass and repass at all times, with all manner of cattle and carriages, over and upon a fifty foot street now laid out by said company, known by the name of Canal street, and over those parts of the streets known by the names of Stark street and Mechanic street which are on land owned by said company, and over and upon all such streets as are now or shall be hereafter laid out by said company in said town of Manchester west of Elm street and east of said company's canal, without expense, and without any hindrance or obstruction by said company. And said company further agree, that as soon as said roads shall be discontinued, they will make, and put in order for public travel, a new street from Elm street to Canal street, between Bridge street and Mechanic street. And said company further agree that they will make, and put in order for travel, all the streets which they may lay out west of Elm street and east of their upper canal, as aforesaid, at their own expense, and that they will keep in repair all the streets now laid out or which may be hereafter laid out by said company west of said Elm street and east of their upper canal, as aforesaid, at their own expense. Provided, however, that if either of said streets

shall be laid out as public highways, all obligation on the part of said company to make or repair the same shall cease. And provided further, that nothing herein contained shall be construed in any way to interfere with the right of said company to use said streets for the purpose of building on the adjoining lots, or their right to alter said streets, or substitute others, or to change the grade of the same, or make any alteration therein not inconsistent with the public accommodation, at their pleasure."

At a town-meeting, February 1, 1841, a committee, previously appointed to ascertain on what conditions a cemetery and town-house lot could be obtained, reported that they had applied to the company, and the company " proposed to deliver to the town the deeds presented herewith, upon the conditions stated therein, in case the town shall think proper to accept the same." The three deeds accompanied the report. The town voted, on motion of Mr. Bell, to accept the deed of a burying-ground offered by the company, upon the conditions expressed therein, and that all the roads described in said deed be discontinued, provided the court of common pleas shall consent thereto, if such consent is by law necessary, and that the selectmen be directed to procure such consent without delay ; and voted to accept the other two deeds, and to discontinue the roads for the discontinuance of which the company stipulated. Said roads were legally discontinued within the two years, and all the agreements and stipulations of the three deeds were executed and carried into effect.

The defendants introduced two witnesses. E. A. Straw testified : I have been agent of the company nearly twenty years ; have been in their employment since 1838 ; began to work for them in 1838 as civil engineer in laying out their land and works ; Canal street was built by them in connection with and alongside of their upper canal, and as part of their plan of operations ; the northern end was built in 1839 and 1840, principally with the earth dug out in making the canal ; at the point where Middle street now joins it, it was built about 1844 or 1846 ; there have been signs " Canal street, private-way " on the east side of the street, on the buildings at all or nearly all the corners ; my impression is, they were put up in 1858 ; we built Canal and Middle and other streets on our own land, and always claimed all the streets west of Elm street as ours, as private ways, except some, not including Canal street ; we own the land on both sides of the street where Middle street joins it, and all up to within one hundred feet of Elm street ; we always claimed and exercised the right of controlling Canal street whenever we chose, and understood that was our right under the written contracts with the town ; my understanding was, that the public used it when we had no occasion to stop it ; when we had occasion to dig up or change any part of it, we did so under a claim of the right to control the street as one of our private ways ; don't remember that we had occasion to stop it up entirely at any time ; when we temporarily dug up or blocked up any part of it, think we always left room for people to pass ; it was and is chiefly used as a road for business connected

with the mills; has also been used for other business by everybody who had occasion to use it without objection, but used very little except by those having business with the mills; I ordered the signs put up on the corners of our own buildings on the street; know they were put up on Canal street; on the plan, Canal street extends southerly by the depot to Elm street, but think it is not yet built south as far as Elm street; it is used every day by people not connected with the mills; we put up the lamp posts on Canal street; the city have put some lamps in some of our streets; my impression is, the city pay for lighting all our streets; we pay for gas burned on Canal street opposite our gates; I understand it is a common thing for individuals to put up lamps, to be lighted at the expense of the city; at the depot, Canal street is paved a distance, perhaps, of one thousand feet; believe the company paid one half, the railroad one fourth, and the city one fourth of the expense of paving; about 1856, the location of Canal street, at the depot, was changed by authority of the company in pursuance of an agreement between the company and the railroad; it was when the present depot was built; the railroad wanted more room, and we moved the street (Canal street) east a considerable distance, and let them have more room; we owned all the land; they built the present depot east of the former one, and moved their tract to the east commencing at a point north of middle street, pushing the railroad into the street more and more going south to the depot; this altered the location of Canal street; I think the alteration at the junction with Middle street was perceptible on the ground, though it may not be on the plans; the alteration made it more crooked; we originally laid out Canal street one hundred feet wide, and afterwards let the railroad have their right of way over about one half of the west side of it.

H. P. Moulton testified in relation to the signs "private-way" on Canal street.

Upon an inspection of the street made by the court by agreement of parties, such signs were found on Canal street at the corner of Merrimack street, south of Middle street, and at the corners of Mechanic and Bridge streets, north of Middle street, and not elsewhere on Canal street.

In answer to an inquiry made by the court, the plaintiff's counsel stated they should not undertake to control or vary the foregoing evidence except as to the amount of travel on Canal street; and therefore the court *pro forma* ordered a nonsuit, and the plaintiff excepted.

*Lord & Sulloway*, for the plaintiff.

*Briggs & Huse*, for the defendants.

\*Cushing, C. J.   This case comes before the court on the plaintiff's exception to the order for a nonsuit at the trial term.   The question,

---

\*Smith, J., being a resident of Manchester, did not sit.

therefore, is, whether there was any evidence for the jury to consider tending to show that the defendant city were liable for damages occasioned by the insufficient and defective condition of Canal street.

The evidence tended to show that in the year 1841 an arrangement was made between the city, then the town, of Manchester and the Amoskeag Manufacturing Company, a corporation, by which that corporation bound themselves at all times to keep in repair suitable for use by the public, and permit the public freely to use, this same Canal street and certain other streets already made or to be made by them in said Manchester; that the negotiation for this arrangement was openly and publicly made in a town-meeting in the town of Manchester, and that by the arrangement the town, having discontinued certain highways, became entitled to have Canal street and certain other streets kept in sufficient repair and thrown open to the public use; that such covenants on the part of the corporation were made as would effectually secure the town against the expense of maintaining and repairing said streets, and bind the corporation to indemnify the town in the event of their being obliged to respond in damages to any party by reason of any defect in said streets; that in pursuance of this arrangement thus publicly made, Canal street has been thrown open to public travel, and has been used by the public as freely as other streets in the city, having all the time been kept in repair by the corporation which claimed the right to control it, claiming that it was a private street and not a highway, but always keeping within their covenant to the effect that whatever they did with the street should not be " inconsistent with the public accommodation;" that this use of Canal street has been going on uninterruptedly for thirty years or more, the street remaining substantially where it was in the beginning, and there being no evidence that the defective portion of the street where the accident happened had not been from the beginning a part of the street; that certain signs were put up by the corporation on some buildings in Canal street with the words " private-way" upon them, for the purpose of showing that the street was not dedicated to the public, but not for the purpose of warning off people from travelling upon it; that the public in general, and this plaintiff in particular, had reason to believe that Canal street was a street provided for public use by the action of the city; and that the public in general, and this plaintiff at the time of the accident, did so use Canal street.

It appears to me, therefore, that the evidence tends strongly to bring the case within the ordinary principles of estoppel; and that if these facts are made out, the city of Manchester are now estopped to deny for the purposes of this action that Canal street is a highway, for any defects and insufficiencies in which they are liable as in the case of other highways. The general doctrine, as stated by Lord DENMAN in *Pickard* v. *Sears*, 6 A. & E. 460, that "When one by his words or conduct wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, or to alter his own previous position, the former is concluded from averring against the

latter a different state of things as existing at the same time," has been recognized and adopted by our courts in the cases of *Davis* v. *Handy*, 37 N. H. 65, *Simons* v. *Steele*, 36 N. H. 73, *Odlin* v. *Gove*, 41 N. H. 465, and *Drew* v. *Kimball*, 43 N. H. 285.

In *Hale* v. *The Union Mut. F. Ins. Co.*, 32 N. H. 299, it is said, by PERLEY, C. J.,—"As a general rule, corporations have power to waive their legal rights, and are bound by implication and estoppels *in pais* like natural persons. They can claim no exemption from the operation of those rules and maxims which are established to enforce good faith and fair dealing among individuals." To this effect are *Heath* v. *Franklin Ins. Co.*, 1 Cush. 257 ; *Clark* v. *New Eng. Ins. Co.*, 6 Cush. 342 ; *Concord* v. *Concord Bank*, 16 N. H. 29.

If these views are correct, it appears to me that there was evidence for the jury to consider tending to show that the city of Manchester had so conducted themselves in regard to Canal street that they were estopped to deny that that street was a highway, for any defects or insufficiencies in which they were was liable as in the case of other highways under the statute.

LADD, J., concurred.

FOSTER, C. J., C. C. I concur in the opinion expressed by my brother CUSHING. It is quite clear that municipal corporations are bound by equitable estoppels, like natural persons. Big. on Estop. 464–466 ; Dill. on Mun. Corp., sec. 498 ; Cooley's Const. Lim. 254 ; *The People* v. *Maynard*, 15 Mich. 470 ;—see *Hale* v. *Ins. Co.*, 32 N. H. 295.

The general doctrine, as declared by Lord DENMAN in *Pickard* v. *Sears*, has been expressly recognized in this state, not only in the cases cited by my learned brother, but especially in the more recent cases of *Horn* v. *Cole*, 51 N. H. 287, and *Stevens* v. *Dennett*, 51 N. H. 324, where the distinction between equitable and legal estoppels by matter *in pais* is remarked upon.

The case at bar falls within the class of equitable estoppels by conduct. How it might be if the highway in question had not been used so many as twenty years, it is not necessary in this case to determine.

*Exceptions allowed.*