HARDY, *Adm'r, v.* KEENE.

If the second mortgagee of land informs the first mortgagee that he shall
not redeem from it, and the latter, in reliance upon such information,
does not foreclose his mortgage, but obtains a deed from the owner of
the equity of redemption and makes valuable improvements, the second
mortgagee is estopped from redeeming the land from the first mortgage.

BILL IN EQUITY, to foreclose a mortgage. The court found
that the bill should be dismissed, and the plaintiff excepted.

*Silas Hardy, pro se.*

*Batchelder & Faulkner, Don H. Woodward,* and *Charles H. Her-
sey,* for the defendants.

BLODGETT, J. Bill in equity to foreclose a mortgage upon land
in Roxbury formerly owned by Osborne & Hale, and which was
sold and conveyed by them, February 1, 1870, to one Ruggles for
the agreed price of $500, for which he gave them his notes of that
date secured by a mortgage of the premises. September 2 of that
year Ruggles borrowed of the plaintiff's wife, Josephine M.
Hardy, $325, for which he gave her his note, secured by a second
mortgage of the same premises; and this is the mortgage now
sought to be foreclosed. Josephine having deceased, the plaintiff,
as administrator of her estate, brought suit upon her note against
Ruggles, and also a suit against him to foreclose the mortgage,
and obtained judgment in both July 3, 1874. The amount found
due in the foreclosure suit, after applying what was collected by
the suit in assumpsit and satisfying the costs, was $320.22. No
possession of the land was taken by the plaintiff by writ of posses-
sion upon the judgment or otherwise, and none has ever been
taken by him, nor has any part of the judgment ever been paid.

In May, 1874, Ruggles conveyed the premises, subject to the
aforesaid mortgages, to one Grow, and moved from the state.
Grow remained on the premises until late in 1877, when he aban-
doned them and went to Vermont. In 1878 Osborne & Hale, who
had received nothing on their notes, proposed to foreclose their
mortgage and take possession of the land. Osborne called on the
plaintiff and informed him of their purpose. The subject of both
mortgages was talked over between them, and the understanding
arrived at that if Grow would give Osborne & Hale a quit-claim
deed of the premises, they would take possession of the premises
and not bring a suit to foreclose. Thereupon the plaintiff pro-
cured Grow's consent, and sent him a form of deed partly written,
which was subsequently completed and executed on October 14,
1878, and delivered to Osborne & Hale. At this time the prem-

ises were worth nothing above their mortgage, and Osborne understood from the plaintiff, and informed Hale, that the plaintiff did not intend to redeem. Upon obtaining the deed, Osborne & Hale went into possession of the premises, and with the understanding, of which the plaintiff was knowing, that it gave them title to the land, repaired at considerable expense the saw-mill and dam thereon, which had become much decayed and out of repair. They operated the mill for about two years. In 1881 Osborne quit-claimed his interest in the premises to the Citizens' National Bank of Keene, which quit-claimed to Hale in 1882, who quit-claimed to the Keene National Bank in March, 1886, and the latter conveyed by quit-claim to the defendants in the following October. The consideration of this conveyance was $2,000, and in the covenant clause the defendants are guaranteed against any claim of the plaintiff in the premises. The object of the defendants' purchase was to enable them to control the flow of water from the premises, and they have since repaired the dam and constructed gates for this purpose. The plaintiff was not aware of the conveyances, except constructively by their record, until after the conveyance to the Keene National Bank, when he informed the cashier of his claim. After the conveyance to the defendant city, he notified the mayor and aldermen of his claim, and demanded payment of it, which was refused. Up to this time he had made no claim to the land on any one since his judgment of foreclosure in 1874, and did not bring this suit until 1889.

On the foregoing facts it was found at the trial term hearing that the plaintiff is estopped by his acts and conduct from now claiming the land, that there is no equity in his claim, and that whatever equity he might have had he has lost by his laches; and the bill was accordingly dismissed, subject to the plaintiff's exception.

However it may be with the finding as to laches, no legal error appears in the other findings, and having been made upon competent evidence, they are not open to revision. *Maloon* v. *White*, 57 N. H. 152, 153; *Page* v. *Whidden*, 59 N. H. 507, 511; *Horn* v. *Cole*, 51 N. H. 287; *Stevens* v. *Dennett*, 51 N. H. 324; *Gilbert* v. *Manchester*, 55 N. H. 298; *Buzzell* v. *Hardy*, 58 N. H. 331; *Appleton* v. *Insurance Co.*, 59 N. H. 541; *Chamberlain* v. *Lyndeborough*, 64 N. H. 563, 564, 565; Big. Est. 452, 453.

*Exceptions overruled.*

ALLEN, J., did not sit: the others concurred.